COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BRENDA LIZ VIERA a/k/a BRENDA LIZ SANCHEZ, | § | No. 08-08-00333-CV |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 65th District Court |
| | § | |
| CARMELO MANUEL VIERA, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC#2007CM7002) |
| | § | |

**O P I N I O N**

In this divorce action, Brenda Liz Viera, Appellant, appeals the trial court's division of the marital estate and the designation of Carmelo Manuel Viera, Appellee, as joint managing conservator of their minor children, alleging that the trial court abused its discretion. We affirm.

**BACKGROUND**

Brenda and Carmelo were married in March 2005, and two children were born of the marriage. Approximately two-and-one-half years later, on October 17, 2007, Carmelo petitioned for divorce, and Brenda filed her response and cross-petition. Each party alleged insupportability and cruelty as grounds for divorce, and each sought designation as joint managing conservator of their children. Before the final divorce hearing, the following documents were filed with the trial court.

*Inventory*

Community Estate Assets

Brenda did not file with the trial court an inventory and appraisement regarding any community or separate estate assets or liabilities; however, Carmelo did. In his verified inventory

1

and appraisement of assets, liabilities, and community and separate estates, which contained only recitals and no supporting documentation, Carmelo identified as belonging to the community estate a residence with an alleged fair market value of $146,898 as of January 16, 2008, bearing a mortgage of more than $128,000, and having a net equity of approximately $3,879.[1] As to cash and accounts with financial institutions, Carmelo identified a joint checking account with Brenda having an account balance of $265, and a bank account bearing Carmelo's name alone with a balance of $100, for a cash total of $365.

Carmelo identified two retirement benefits among the community's assets. The first was a thrift savings plan (TSP) to which Carmelo assigned a community value interest of $1,443 as of January 16, 2008.[2] According to Carmelo's inventory, the TSP account had a balance of $24,184 as of September 30, 2007, two weeks before he filed for divorce, and was encumbered by a $10,000 loan.[3] Carmelo's inventory states that his creditable service regarding the TSP commenced in March 1996, nine years before he married Brenda. No financial documents were offered in support of Carmelo's representations regarding the TSP.

Carmelo's Federal Employees Retirement System (FERS) pension comprised the second component of his retirement benefits. In his inventory, Carmelo identified the starting date of his creditable service for the FERS pension as February 2006, eleven months after he married Brenda.

---

[1] Amounts have been rounded to the nearest whole dollar.

[2] The Thrift Savings Plan (TSP) is a component of the Federal Employees' Retirement System Act of 1986. Federal Employees' Retirement System Act of 1986, Pub. L. No. 99-335, 100 Stat. 514 (1986) (codified as amended at 5 U.S.C.A. Pt. III, Subpt. G, Ch. 84, Subch. III (2010)).

[3] The outstanding balance borrowed from the TSP is not included on Carmelo's inventory as either a community or separate debt. However, there is some evidence that the debt was incurred during the divorce proceedings.

Carmelo did not submit with his inventory either a value for his FERS pension nor financial evidence showing the value of the FERS account.

A 2004 motorcycle was also listed in the inventory and was noted as being in Brenda's possession. Carmelo listed the fair market value of the motorcycle as $6,000, noting that no equity existed in the vehicle, which had a loan balance of $16,000.[4]

Community Estate Liabilities

As part of the community liabilities, Carmelo identified that he and Brenda were both named on eleven accounts for which they owed creditors a total of $38,112. Carmelo's attorney fees were noted to be $4,550, while Brenda's were listed as unknown. Carmelo also listed an unknown balance for a deficiency related to the financing of a 2003 Honda minivan, which had been repossessed.

*Proposed Distributions*

Brenda

In her proposed distribution of community assets and debts, Brenda asked that the community property be divided by awarding her $6,973 cash allegedly withdrawn by Carmelo, $4,000 to match the equity in the home, and one-half of Carmelo's TSP in an amount of $12,092, all to be awarded from the TSP, for a total of $23,065.76. Brenda proposed that Carmelo be awarded $4,000 equity in the residence, and the remainder of $1,119 from his TSP. She also asked that the trial court award all debts against Carmelo.

Carmelo

In his proposed division of community assets, Carmelo sought the marital residence, which

---

[4] The loan balance of this vehicle appears to be included in the community liabilities noted hereafter.

3

he valued at $3,879, after deducting the mortgage owed and a 10 percent cost related to selling the home. Carmelo requested that funds in the checking accounts be distributed to him. As to his TSP, Carmelo requested that he be awarded the entirety of what he had claimed to be the community property interest in that account, $1,443. He also sought to receive all of the community estate portion of his FERS pension, which Carmelo quantified as 22 percent of the total FERS account but for which he failed to submit any evidence of value.

Carmelo proposed that $6,000 from the proceeds of the sale of a 2004 motorcycle be distributed to Brenda.[5] According to Carmelo's calculations, the value of the community assets were $11,689 and as a result of his proposed division, Carmelo would receive $5,689 of the community assets and Brenda would receive $6,000 of the community assets. As to the community liabilities, Carmelo proposed that he be ordered to pay all of the debt identified in his inventory, as well as his attorney fees, which had increased to $6,400, and the remaining $8,000 balance owed on the repossessed Honda minivan. Under his proposal, Carmelo would be responsible for paying $52,513 of the community liabilities. Carmelo requested that Brenda be ordered to pay only her own attorney fees in the sum of $4,000, and none of the community debt.

*Separate Property*

Brenda did not identify or claim any separate property. Carmelo not only claimed that $12,742 of the TSP belonged to his separate estate, but also asserted that 78 percent of his FERS pension was his separate property. Carmelo failed to present any tracing evidence in support of his contention that these two components of his retirement benefits, in whole or in part, were of a separate characterization.

---

[5] At the final divorce hearing, Brenda testified that she had already sold the motorcycle.

4

*Final Hearing*

A final divorce hearing was conducted on September 8, 2008. Before any testimony was presented, counsel for both parties informed the trial court that Brenda and Carmelo had agreed to joint managing conservatorship with Brenda to establish the residence of the children. Carmelo's counsel informed the trial court that the primary issues for the trial court were relocation of Brenda and the children to Puerto Rico, and division of the liabilities and assets of the marital estate, which was described as essentially negative.

Both Brenda and Carmelo testified at the hearing. The evidence showed that although Brenda had a bachelor's degree in transportation management, she had not worked or pursued employment during all or part of the marriage due, in part, to her limited English-speaking abilities and because of her strained relationship with her mother-in-law, with whom she did not wish to leave their children. Brenda had filed a number of reports with Child Protective Services, the police department, and Carmelo's employer alleging that Carmelo was abusing her and the children. No documents created as a result of Brenda's reports to any of these agencies were offered into evidence. However, a non-prosecution statement and two additional statements signed by Brenda before a notary public in which she retracted her allegations were admitted into evidence. Brenda testified that it was her responsibility to pay the bills with the money that Carmelo gave her. She also stated that, although she had not looked for work since the divorce papers were filed, her brother had purchased a car for her and was sending her $300 per week. Brenda also admitted that she had been communicating with men over the internet and stated that the communications were not of a sexual or romantic nature.

Carmelo testified that he had been a federal employee for 12 years and had a TSP, which had

a balance of approximately $20,000 upon his marriage to Brenda and was presently valued at $24,000 but was encumbered by the $10,000 loan which were used to pay some debts and support Carmelo through the divorce process. In response to his counsel's questioning, Carmelo stated that he wanted the trial court to confirm his separate property interest in the TSP and FERS pension, and claimed that 22 percent of the FERS pension was community property.[6] Carmelo neither testified nor offered any documentation into evidence regarding the value of his TSP or FERS accounts, but he did state on cross-examination that he believed he had submitted documentation with his inventory.[7] He requested that he be awarded all community property assets and liabilities, including the home, the equity in the home, and its mortgage, the community property interests in his retirement benefits, along with all existing debt. Carmelo denied the family violence accusations and noted that because of Brenda's repeated, recanted, and unfounded accusations of abuse, he had been subjected to Internal Affairs investigations, his ability to advance to a management-level position had been eradicated, and his nomination for exemplary service had been withdrawn. Carmelo requested that the children's residence be restricted to El Paso to permit him to be active in his children's lives. Carmelo stated that he was willing to pay child support of $1,111 per month and provide the children of the marriage with health insurance and pay one-half of their uninsured medical costs.

At no time during the hearing did either party offer into evidence any financial documents

---

[6] This testimony is contrary to Carmelo's sworn inventory wherein he claimed that the TSP was his separate asset and 100 percent of the FERS was community property.

[7] The appellate record does not contain any supporting documentation and there was no documentary or expert testimony in support of Carmelo's separate property characterizations or in support of any valuations regarding the marital assets or liabilities, whether of a separate or community characterization, offered into evidence at trial.

or records that would support or contradict either Carmelo's valuation of the marital assets and liabilities or his characterization of the assets or liabilities as separate or community. The trial court ordered the parties to file written final arguments.

*Written Final Arguments*

In her final written argument to the trial court, Brenda argued that the trial court should not order and impose a geographic restriction to El Paso County, Texas, and that, if it did so, it should only impose the restriction while Brenda continued to live in El Paso County. She did not request that she be named sole managing conservator of their children. Instead, Brenda argued that Carmelo had failed to present clear and convincing evidence that his retirement funds were partially accumulated by him prior to his marriage to Brenda, and complained that he had failed to offer testimony regarding the amount of such funds that might be his separate property. As a result, Brenda asserted that Carmelo had failed to overcome the community property presumption with regard to those accounts.

In his written closing argument, regarding their children, Carmelo requested that the trial court: (1) award joint managing conservatorship of the children with Brenda as the primary joint managing conservator and a geographic restriction to El Paso until Carmelo no longer resides in El Paso; (2) direct that he pay child support of $1,111 per month; (3) grant him extended standard possession; and (4) order him to provide health insurance for the children, with each parent paying one-half of any uninsured medical expenses. Regarding the property and debt, Carmelo requested that he receive the home and equity, his community and separate property interests in his FERS pension and his TSP, and all personal property in his possession. Carmelo asked that he be directed to pay the mortgage on the home and all of the community debt. He asked that Brenda receive all

7

furniture and furnishings in her possession as well as her personal property, and that she pay none of the debts.

In support of his requests, Carmelo argued that Brenda had attempted to have him fired from his employment by making repeated reports of domestic violence and child abuse to his employer, noting that Brenda had withdrawn domestic violence allegations on three occasions and that Child Protective Services had ruled out any child abuse. Noting that Brenda has a college degree, Carmelo explained that Brenda had not made efforts to find work during the marriage and had not made attempts to improve her English-speaking abilities, even though the children's paternal grandmother was available to provide day care for the children in El Paso, and Brenda had a fully-paid automobile. He explained that if Brenda was permitted to move the children, both of whom were less than three-years' old during the proceedings, it would impede his ability to foster a positive relationship with his children, and would contravene the public policies established in the Texas Family Code. Carmelo claimed that the $10,000 loan taken against his TSP was used for the living expenses of the family, and was, therefore, a debt properly discharged by the community. He informed the trial court that he was willing to pay the debts of the marriage, including the mortgage, the deficiency judgment on the repossessed car, and the credit card debt in his and Brenda's names.

*Divorce Decree*

The divorce decree was pronounced and rendered on October 13, 2008, and was signed by the trial court on October 31, 2008. In the divorce decree, the trial court named Carmelo and Brenda joint managing conservators of their children, with Brenda having the exclusive right to designate the primary residence of the children within El Paso County and to change the primary residence from El Paso County if Carmelo does not reside in El Paso County. The decree also included

8

provisions permitting the children to travel internationally under certain terms and conditions. Carmelo was ordered to pay child support of $1,111 per month and provide health insurance for the children, and each party was directed to pay one-half of the uninsured medical expenses.

Brenda was awarded all personal property and cash in her possession or subject to her sole control, and was ordered to pay any debts in her name alone. She was not ordered to pay any community debt. Carmelo was awarded the marital residence, the cash and personal property in his possession or subject to his sole control, and all of the separate and community property interest in his FERS pension and TSP. Carmelo was ordered to pay the mortgage on the marital residence, which had a principal sum of $104,000, as well as all other identified debts to creditors in the amount of more than $56,100, and any debt in his name alone. The trial court confirmed 78 percent of Carmelo's FERS pension as his separate property but did not determine the values of Carmelo's TSP or FERS accounts. Each party was ordered to pay their respective attorneys' fees.

The divorce decree permanently enjoined Brenda from communicating in person, by telephone, or in writing with Carmelo's employer. Brenda's motion to reconsider and motion for new trial were denied by the trial court, and this appeal ensued.

## DISCUSSION

As Issues One, Two, and Four attack the trial court's division of community property, we address them first, and address Issue Three, regarding conservatorship of the children, last.

### Standard of Review

We review most appealable issues in a family law case, such as property division incident to divorce or partition, conservatorship, visitation, and child support, under an abuse-of-discretion standard. *Garcia v. Garcia*, 170 S.W.3d 644, 648 (Tex. App. – El Paso 2005, no pet.). The test for

an abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *Garcia*, 170 S.W.3d at 649; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

In reviewing a trial court's division of a marital estate, it is our duty to presume that the trial court properly exercised its discretion. *Chafino v. Chafino*, 228 S.W.3d 467, 473 (Tex. App. – El Paso 2007, no pet.); *Burney v. Burney,* 225 S.W.3d 208, 215 (Tex. App. – El Paso 2006, no pet.). Thus, the party challenging the division bears the burden of demonstrating from the evidence in the record that the trial court's division was so unjust and unfair as to be an abuse of discretion. *Chafino*, 228 S.W.3d at 473-74; *Burney*, 225 S.W.3d at 215.

The Texas Family Code requires that a trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001 (Vernon 2006). Although the division must be equitable, a trial court need not divide community property equally. *Chafino*, 228 S.W.3d at 474; *Chacon v. Chacon*, 222 S.W.3d 909, 915 (Tex. App. – El Paso 2007, no pet.).

We employ a two-pronged test in determining whether the trial court abused its discretion and inquire: (1) did the trial court have sufficient information upon which to exercise discretion, and (2) did the trial court abuse its discretion by making a property division that was manifestly unjust or unfair? *Chafino*, 228 S.W.3d at 472; *Burney*, 225 S.W.3d at 215; *Chacon*, 222 S.W.3d at 915. In making the division, the trial court was authorized to consider a variety of factors, which our jurisprudence commonly refers to as the "*Murff*" factors. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *Garcia v. Garcia*, 170 S.W.3d 644, 653 (Tex. App. – El Paso 2005, no pet.). Among the variety of "*Murff*" factors that the trial court may consider in dividing the marital estate are: (1) the

10

spouses' capacities and abilities; (2) benefits which the party not at fault would have derived from the continuation of the marriage; (3) business opportunities; (4) relative physical conditions; (5) relative financial conditions; (6) disparity of ages; (7) size of separate estates; (8) the nature of the property; and (9) disparity of earning capacity. *Murff*, 615 S.W.2d at 699. "We defer to the trial court's determination of the credibility of the witnesses' testimony and disturb the trial court's findings only in a case of clear abuse of discretion." *Burney*, 225 S.W.3d at 215; *see Murff*, 615 S.W.2d at 700 (absent an abuse of discretion, the trial court's property division will not be disturbed on appeal).

In a non-jury trial such as this, where we are without the benefit of the trial court's formal findings of fact and conclusions of law, we will presume that the trial court made all findings necessary to support the judgment.[8] *Chafino*, 228 S.W.3d at 472; *Sprick v. Sprick*, 25 S.W.3d 7, 11 (Tex. App. – El Paso 1999, pet. denied); *see also Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App. – Houston [1st Dist.] 2006, pet. denied) (Where a trial court does not enter findings of fact or conclusions of law, we must draw every inference supported by the record in favor of the trial court's judgment). We will affirm the trial court's judgment if it can be upheld on any legal theory that is supported by the evidence. *Gainous*, 219 S.W.3d at 103.

The Texas Family Code establishes a presumption that property possessed by either spouse during or at the dissolution of marriage is community property. TEX. FAM. CODE ANN. § 3.003(a) (Vernon 2006); *Sprick,* 25 S.W.3d at 17. The community property presumption applies not only to assets but to liabilities, as well. *Sprick*, 25 S.W.3d at 17. Therefore, there is a presumption that debt

---

[8] On November 21, 2008, Brenda requested that the trial court issue findings of fact and conclusions of law. There are no such findings or conclusions in the record, and there is nothing in the record demonstrating that Brenda filed a notice of past due findings with the court.

acquired by either spouse during marriage was procured on the basis of community credit. *Sprick*, 25 S.W.3d at 17, *citing Wierzchula v. Wierzchula*, 623 S.W.2d 730, 732 (Tex. Civ. App. – Houston [1st Dist.] 1981, no writ). An asset purchased on borrowed funds is presumptively community in character, and borrowed funds that are utilized for living expenses should be treated the same. *Sprick*, 25 S.W.3d at 17. The spouse attempting to rebut these presumptions bears the burden of proof and the degree of proof required is clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b) (Vernon 2006); *Sprick*, 25 S.W.3d at 17.

Property owned or claimed by a spouse before marriage or acquired after marriage by gift, devise, or descent is that spouse's separate property. TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 3.001(1)(2) (Vernon 2006). As to separate property, the trial court is without authority to divest a spouse of it. *Burney*, 225 S.W.3d at 215; *see Cameron v. Cameron*, 641 S.W.2d 210, 215-16 (Tex. 1982); *Langston v. Langston*, 82 S.W.3d 686, 688 (Tex. App. – Eastland 2002, no pet.) (trial court may not divest a spouse of separate property and award it to the other spouse).

In Issue One, Brenda first complains that the trial court erred and abused its discretion when it characterized Carmelo's separate debt as community-property debt in its attempt to make a fair and just division of the marital estate. We disagree.

Brenda bases her contention upon Carmelo's answer when he was asked, "How did you acquire so much debt?" Carmelo answered that after he came to the United States from Puerto Rico, Brenda was his girlfriend and "[s]he wanted to come to the U.S. at all costs[,] basically." Carmelo then explained:

> I had to start getting into debt to pay for an apartment for her, get a vehicle for her.
> I wasn't making enough money. I didn't make or we didn't make sound decisions[,]
> you might say, regarding how much we could afford. I had to self[-]fund my moves

12

from basically Puerto Rico to Florida and then from Florida to El Paso. She always promised me that she was going to help me out, that she had her degree and she could find a job anywhere, but never did. So I had to continue to pay our debts and the house and[,] in the meantime[,] trying to give her the lifestyle that she always required for me. I kept on going into more debt and more debt to the point that we are at now.[9]

Carmelo testified that Brenda made most of the credit applications, and explained that he was not able to specify the amount of his individual debt prior to marrying Brenda. None of the testimony elicited by either party at the hearing developed a time line by which to aid the trial court in identifying the debts as being incurred by either Carmelo or Brenda prior to their marriage or as being incurred during the marriage.

Typically, when reviewing an assertion of mischaracterization of separate or community property, we look to our opinion in *Tate* for guidance in resolving the issue before us and conducting a proper harm analysis. *Tate v. Tate*, 55 S.W.3d 1, 6-7 (Tex. App. – El Paso 2000, no pet.). Here, we are not asked to review a mischaracterization of assets but, instead, we are asked to review the trial court's alleged mischaracterization of debt. An obligation to pay which arises before marriage should be treated as the incurring spouse's separate debt and cannot be assigned to the non-incurring spouse.[10] *Love v. Bailey-Love*, 217 S.W.3d 33, 35 (Tex. App. – Houston [1st Dist.] 2006, no pet.).

---

[9] In her brief, Brenda has characterized this testimony as Carmelo's explanation that he had incurred the debts prior to their marriage. She also characterizes Carmelo's testimony as showing that he went into debt moving to various cities within the United States prior to marrying her, that he went into debt to provide her with an apartment in Puerto Rico before marriage, and that the motor-vehicle debt was acquired prior to marriage. Based upon our review, these characterizations are unsupported by the record. We also note that Brenda has not provided citations to the record in support of her argument as required by Texas Rule of Appellate Procedure 38.1(i). TEX. R. APP. P. 38.1(i).

[10] Section 3.202 of the Texas Family Code provides that a spouse's separate property is not subject to liabilities of the other spouse unless both spouses are liable by other rules of law. TEX. FAM. CODE ANN.§ 3.202(a) (Vernon 2006). Unless both spouses are personally liable as otherwise provided, the community property subject to a spouse's sole management, control, and disposition is not subject to any liabilities that the other spouse incurred before marriage or to any nontortious liabilities that the other spouse incurs during marriage. TEX. FAM. CODE

A debt acquired by either spouse during marriage is presumptively a community debt. *Sprick*, 25 S.W.3d at 17. However, the parties in a divorce proceeding are responsible for providing the trial court with a basis upon which it may make a division of the estate. *Chafino*, 228 S.W.3d at 473; *Burney,* 225 S.W.3d at 215.

We note that Brenda did not present any evidence to the trial court, through documentation, through her own testimony, or through cross-examination of Carmelo, which would aid it in knowing when and by whom any of the debts at issue were incurred. In the hearing before the trial court, Brenda did not ask the trial court to characterize any debt as being Carmelo's separate debt. Nor did she attempt to identify on appeal any specific debt which the trial court should have identified as Carmelo's separate debt. As the spouse attempting to rebut the presumption that the debt at issue is community debt, Brenda bears the burden of supporting her rebuttal attempt with clear and convincing evidence. *Sprick*, 25 S.W.3d at 17. For the foregoing reasons, she has failed to meet her burden.

The trial court ordered that Carmelo pay all of the debt, including debt in his own name but it did not order Brenda to pay any debt, except for debt incurred in her name alone. As we are without the benefit of the trial court's formal findings of fact and conclusions of law, we presume that the trial court made all findings necessary to support the judgment. *Chafino*, 228 S.W.3d at 472; *Sprick*, 25 S.W.3d at 11; *see Gainous*, 219 S.W.3d at 103. Because Brenda failed to rebut the community-debt presumption by clear and convincing evidence, we find that the trial court did not

---

ANN.§ 3.202(b)(1)(2) (Vernon 2006). However, the community property which is subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by the spouse before or during marriage. TEX. FAM. CODE ANN.§ 3.202(c) (Vernon 2006).

14

abuse its discretion. TEX. FAM. CODE ANN. § 3.003(a) (Vernon 2006); *Sprick,* 25 S.W.3d at 17; *Gainous*, 219 S.W.3d at 103. Issue One is overruled.

In Issue Two, Brenda complains: (1) that no evidence was elicited at the hearing to show the date of marriage or to show whether Carmelo was a federal employee on the date of marriage; and (2) that Carmelo's evidence is insufficient to overcome the presumption that the retirement benefits are community property. Therefore, Brenda asserts that she is entitled to receive an equal division of Carmelo's retirement benefits for the entire period of Carmelo's creditable service with his employer.

*Standard of Review*

Generally, the characterization of property as separate or community is determined by its character at inception. *Leax v. Leax*, 305 S.W.3d 22, 33 (Tex. App. – Houston [1st Dist.] 2009, pet. denied); *McClary v. Thompson*, 65 S.W.3d 829, 834 (Tex. App. – Fort Worth 2002, pet. denied). Property possessed by either spouse during or upon dissolution of the marriage is presumed to be community property, and a spouse wishing to overcome the community-property presumption must prove the separate character of the property by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 3.003(a) & (b) (Vernon 2006); *Sprick,* 25 S.W.3d at 17; *Phillips v. Phillips*, 296 S.W.3d 656, 674 (Tex. App. – El Paso 2009, pet. denied); *Long v. Long,* 234 S.W.3d 34, 37 (Tex. App. – El Paso 2007, pet. denied); *Tate*, 55 S.W.3d at 4. Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* TEX. FAM. CODE ANN. § 101.007 (Vernon 2008).

15

Property owned before marriage, or acquired during marriage by gift, devise, or descent, is separate property. TEX. FAM. CODE ANN. § 3.001; *Phillips*, 296 S.W.3d at 674; *Long,* 234 S.W.3d at 37; *Tate*, 55 S.W.3d at 4. Where an asset is purchased during marriage with monies traceable to a spouse's separate estate, the asset may be appropriately characterized as separate property. *Phillips*, 296 S.W.3d at 674; *Long*, 234 S.W.3d at 37. However, a spouse's "mere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption." *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App. – Fort Worth 2004, no pet.); *Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App. – Houston [14th Dist.] 2003, pet. denied) (op. on reh'g).

In reviewing an alleged characterization error, we must utilize a two-pronged approach and determine first whether the trial court's finding of separate property is supported by clear and convincing evidence and, if it is not, we must then determine whether the characterization error caused the trial court to abuse its discretion in the overall division of the community estate. *Jurek v. Couch-Jurek*, 296 S.W.3d 864, 873 (Tex. App. – El Paso 2009, no pet.), *citing* TEX. R. APP. P. 44.1(a)(1) ("no judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment"); *Long*, 234 S.W.3d at 38. Thus, a party challenging the trial court's characterization must first establish error by challenging the legal or factual sufficiency of the evidence to support the separate property characterization, and must then conduct a harm analysis and show that because of the mischaracterization, the overall division of the property constitutes an abuse of discretion. *See Jurek*, 296 S.W.3d at 873, *citing Tate*, 55 S.W.3d at 6-7.

*Application*

16

First, in their respective filings, both Brenda and Carmelo stated that they were married on or about March 10, 2005. This date was never contested by either party and is not dispositive of the more significant mischaracterization issue which Brenda raises. Therefore, we proceed to the mischaracterization complaint.

In support of his claim that some portion of his FERS pension account is his separate property, Carmelo testified that he had worked for about 12 years with the federal government. However, Carmelo presented no evidence regarding the values of either the TSP or FERS retirement account, although he claimed 78 percent of the FERS retirement to be his separate property. Neither Carmelo's testimony nor his sworn inventory, which is simply another form of testimony, are supported by other evidence such as periodic account statements, bank records, or employment payroll records. Such records could have demonstrated the date on which Carmelo commenced his federal employment, the date on which he first made contributions to the TSP account and his FERS pension account, and the value of each account at the time of divorce. In sum, Carmelo's mere testimony and lack of supporting documentation are insufficient to trace the funding of his TSP and FERS accounts to any property owned before marriage, and we therefore find that he failed to prove by clear and convincing evidence that the FERS pension is part of his separate estate. TEX. FAM. CODE ANN. §§ 3.001, 3.002, 3.003; *Boyd*, 131 S.W.3d at 612; *see Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App. – Austin 2002, pet. denied) (where husband's testimony and exhibits offered into evidence failed to provide account numbers, statements of accounts, dates of transfers, amounts transferred into and from accounts, sources of funds, or any asset tracing, such evidence was insufficient to constitute clear and convincing evidence establishing separate property character husband's accounts or to rebut the presumed community-property character of the account); *Osorno*

17

*v. Osorno*, 76 S.W.3d 509, 512 (Tex. App. – Houston [14th Dist.] 2002, no pet.) (in the absence of deposit slips and bank records tracing the source of the funds, husband's testimony was insufficient to overcome the community property presumption); *compare Zagorski*, 116 S.W.3d at 316-17 (husband called three witnesses who testified regarding the existence of husband's bank account prior to marriage and identified the source of funds therein, and husband presented documentary evidence concerning the account, thereby establishing that the account funds were his separate property); *Newland v. Newland*, 529 S.W.2d 105, 107-09 (Tex. Civ. App. – Fort Worth 1975, writ dism'd) (because husband's testimony was corroborated by bank records and documentary evidence, husband established that funds in account were his separate property).

Because Carmelo's testimony alone was insufficient to rebut the community property presumption regarding his TSP and FERS accounts, we likewise find that the trial court's separate-property characterization of a portion of the FERS pension was not supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b); *Boyd*, 131 S.W.3d at 612; *Long*, 234 S.W.3d at 37-38.

*Harm Analysis*

Because Brenda has demonstrated error, we next consider whether this mischaracterization of the FERS pension as separate property caused the trial court to abuse its discretion. *Jurek*, 296 S.W.3d at 873; *Long*, 234 S.W.3d at 38. The mere mischaracterization of community property as separate property does not require reversal. *Boyd*, 131 S.W.3d at 617. A trial court does not abuse its discretion if the mischaracterization has but a *de minimus* effect on the division of the community estate. *Boyd*, 131 S.W.3d at 617; *Robles v. Robles*, 965 S.W.2d 605, 621-22 (Tex. App. – Houston [1st Dist.] 1998, pet. denied). However, if the trial court's mischaracterization is of such a

magnitude that it affects the just and right division of the community estate, we must remand the entire case to the trial court so that it may make a just and right division of the estate based upon the proper characterization of the property. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex. 1985); *Boyd*, 131 S.W.3d at 617; *Robles*, 965 S.W.2d at 615.

Brenda was required to not only show the trial court erred in characterizing a portion of Carmelo's retirement benefits as error but must also show that because of this mischaracterization, the trial court's overall division of the property constitutes an abuse of discretion. *Jurek*, 296 S.W.3d at 873, *citing Tate*, 55 S.W.3d at 6-7. However, there is no evidence to establish the actual values of Carmelo's retirement benefits, nor the total value of the community estate. Brenda makes no argument that the error was harmful at all; rather, Brenda simply asserts that we should "order an equal division of the retirement benefits covering the entire period of [Carmelo's] creditable service with the federal government," or that "the Court" should award one-half of Carmelo's retirement benefits from the filing of the divorce petition to the date of divorce "to prevent her from being completely divested of all right, title, and interest in and to these retirement benefits."

The trial court is required to divide the estate of the parties in a manner that the trial court deems just and right, with due regard for the rights of each party and any children of the marriage. TEX. FAM. CODE ANN. § 7.001 (Vernon 2006). Yet, there is no requirement that the community share of retirement benefits be divided equally. *LaFrensen v. LaFrensen*, 106 S.W.3d 876, 878 (Tex. App. – Dallas 2003, no pet.). It is within the trial court's discretion to grant a disproportionate share to one of the parties. *LaFrensen*, 106 S.W.3d at 878; *Murff*, 615 S.W.2d at 699. As our own review does not demonstrate that the trial court's mischaracterization error was harmful, we overrule Issue Two.

In her fourth issue on appeal, Brenda complains that the trial court abused its discretion in dividing the marital estate by failing to give due consideration to the *Murff* factors and in failing to consider Brenda's evidence of Carmelo's cruel treatment. *Murff*, 615 S.W.2d at 699. Initially, we note that *Murff* sets forth a non-exclusive list of factors which a trial court may consider in its division of the marital estate. *Murff*, 615 S.W.2d at 699. Second, because there are no findings of fact nor conclusions of law, we have no evidence before us which demonstrates the specific factors that the trial court may or may not have considered in making its division of the marital estate. We therefore presume that the trial court made all findings necessary to support the judgment. *Chafino*, 228 S.W.3d at 472; *Sprick*, 25 S.W.3d at 11; *Gainous*, 219 S.W.3d at 103. We will affirm the trial court's judgment if it can be upheld on any legal theory that is supported by the evidence. *Gainous*, 219 S.W.3d at 103.

Here, because the trial court's division is supported by some evidence of a substantive and probative character, we find that the trial court did not abuse its discretion upon this basis. *See Garcia*, 170 S.W.3d at 649. In reviewing the record, it is clear to us, as it must have been to the trial court, that the marital estate was in a cash-negative status. Both Brenda and Carmelo testified before the trial court. The court heard evidence that most of the credit applications had been made by Brenda. The evidence showed that despite her college education and ability to work, Brenda had not made efforts to either work to improve the family's financial status, or to improve her English-speaking skills for that purpose.[11] Brenda testified that since the initiation of the divorce proceedings, her brother had bought her a car and was sending her $300 per week in support of her

---

[11] English is not Brenda's primary language, and she noted that her limited English skills affected her ability to interact with customers when she worked at a retail store.

20

and her children. Carmelo had agreed to take all of the debt, provide health insurance for the children, and pay $1,111 per month in child support, while caring for his own mother and his oldest child.

Brenda admitted that she had been corresponding with at least four males over the internet during the marriage but denied that there were any romantic or sexual components to these communications. The trial court heard Brenda's and Carmelo's litany of accusations and, arguably, cruelty, against the other. Deferring to the trial court's determination on witness credibility, and based upon our review of the record, we do not find that a clear abuse of discretion exists which will permit us to disturb the trial court's findings. *Burney*, 225 S.W.3d at 215; *see Murff*, 615 S.W.2d at 700 (absent an abuse of discretion, the trial court's property division will not be disturbed on appeal). Issue Four is overruled.

In her third issue on appeal, Brenda asserts that the trial court abused its discretion in naming Carmelo as joint managing conservator because the record supports a finding that Carmelo committed family violence under Section 153.004 of the Texas Family Code. TEX. FAM. CODE ANN. § 153.004 (Vernon 2008). In determining whether to appoint a party as a sole or joint managing conservator, Section 153.004(a) of the Texas Family Code requires the trial court to consider evidence of the intentional use of abusive physical force by a party against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit. TEX. FAM. CODE ANN. § 153.004(a) (Vernon 2008). A court is barred from appointing joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or

21

sexual abuse by one parent directed against the other parent, a spouse, or a child as set forth in Section 153.004(b). TEX. FAM. CODE ANN. § 153.004(b) (Vernon 2008).

A trial court has wide discretion when determining the best interest of a child with regard to custody, visitation, and possession. *Pena v. Pena*, 8 S.W.3d 639, 639 (Tex. 1999); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). The record before us contains no police or CPS reports, no judgments, and no protective order. Therefore, the evidence which the trial court had before it for its consideration in determining the best interests of the child was the parents' testimony, evidence presented at the final hearing, and their pleadings.

When a trial court is presented with conflicting evidence, it may believe one witness and disbelieve others. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *Gonzalez v. Gonzalez*, No. 08-01-00453-CV, 2004 WL 1178898, at *6 (Tex. App. – El Paso May 27, 2004, no pet.) (not designated for publication) (McClure, J., concurring) ("Where the parties tell different versions of a confrontation, the trial court must determine the weight and credibility of the evidence." ); *Clark v. Funk*, No. 08-97-00634-CV, 2000 WL 1203942, at *5 (Tex. App. – El Paso August 24, 2000, no pet.) (not designated for publication). "Where there is nothing in the record to demonstrate that the trial court did *not* consider the testimony of family violence, the trial court rarely abuses its discretion in granting joint managing conservatorship." *Gonzalez*, 2004 WL 1178898, at *6. Here, Brenda testified that she had reported Carmelo to the police for domestic violence and to CPS for child neglect. Her testimony was contradicted by both Carmelo's testimony and by multiple signed and notarized documents wherein she expressly retracted her allegations. The testimony related to child neglect was likewise contradictory. As no findings of fact or conclusions of law were entered by the trial court, it appears that the trial court determined that Brenda's

evidence of domestic violence and child neglect was not credible, and that the trial court discounted it. Having considered the record before us, we will not interfere with the trial court's credibility determination. *See Pena*, 8 S.W.3d at 639; *Gonzalez*, 2004 WL 1178898, at *6.

Moreover, in her pleadings, Brenda requested that she and Carmelo be appointed joint managing conservators of their children, and at the final hearing, when the trial court asked, "You all agree to joint managing conservatorship?," Brenda's counsel answered, "Yes, Sir." The parties also filed a Rule 11 Agreement setting forth an agreed parenting plan. Tex. R. Civ. P. 11. At no time prior to the entry of the divorce decree did Brenda ever put the trial court on notice that she desired any outcome other than joint managing conservatorship for her children. For the foregoing reasons, we conclude that the trial court did not abuse its discretion in awarding joint managing conservatorship in this matter. Issue Three is overruled.

## CONCLUSION

Having overruled Brenda's issues, the trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

January 12, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

23