

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00022-CV

Juan Juarez **PALAEZ**,
Appellant

v.

Luz Maria **JUAREZ**,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2012CVG001105-D3
Honorable Rebecca Palomo, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  December 17, 2014

AFFIRMED

Juan Juarez Palaez appeals from a final decree of divorce dissolving his marriage to Luz

Maria Juarez and dividing the marital estate.  We affirm the judgment of the trial court.

### BACKGROUND

Juan and Luz were married in 1996 and separated fifteen years later when Juan filed a

petition for divorce.  Luz filed a counter-petition for divorce, alleging that Juan was at fault in

causing the dissolution of the marriage due to adultery and cruel treatment.  Three children were

born of the marriage. In addition, Luz had an adult son from a prior relationship and Juan had two minor children who were born during the marriage due to his infidelity.

The case proceeded to a bench trial. Juan, who was 62 years old at the time of trial, testified that he is a self-employed subcontractor and primarily works as a bricklayer or cement worker. He stated that he earns approximately $15,000-$20,000 per year. He did not file a federal income tax return in 2011 or 2012, but his past returns reflected average earnings of $15,000 per year. His 2010 tax return reflected earnings of $25,700. Form 1099-MISC 2012 was admitted into evidence, showing that in 2012, Juan was paid approximately $97,000 by a company called American Contracting and Roofing. Juan testified that from those earnings, he paid wages to his employees. Juan testified that, in addition to his three children with Luz, he has two other minor children that he is legally obligated to support. He receives government assistance in the form of food stamps. He stated that he is currently unable to work due to the fact that he suffers from diabetes.

During the marriage, Juan personally built a house located at 3716 Daniela Loop; Juan, Luz, and their children resided in this home during the marriage. Juan stated that he believed the appraised value of the Daniela Loop property was $185,000. An additional house, located at 3626 Nubes, was also acquired during the marriage. Luz's adult son from a previous relationship, Victor, lives in the Nubes property. Juan testified that Luz made all the arrangements to purchase the Nubes property and that he first learned about the purchase six months after the fact. Legal title to the Nubes property is in Luz's name. Juan testified that on two occasions, he lent Luz about $700 so that she could make the mortgage payment on the Nubes property, and that he made some improvements on the property. Juan testified that he wanted both properties sold and the proceeds to be divided equally between him and Luz.

On cross-examination, Juan admitted that he has a drinking problem and that Luz went to the women's shelter three or four times during their marriage because he became physically violent

towards her. He explained that he became upset when he found out that Luz had a boyfriend. He acknowledged that Luz obtained a protective order based on family violence in October 2011 and that it was still in effect at the time of trial. He acknowledged that the two other children born during his marriage to Luz were a result of an ongoing relationship with another woman.

Luz testified that she signed for the bank loan on the Nubes house for her son Victor's benefit because he was not credit-worthy. She told the bank that Victor was the "real buyer." She was not employed at the time she applied for the loan. She stated that Victor makes the mortgage payments but that title to the house is in her name. Victor provided all of the money for the down payment. She denied that either she or Juan paid any money towards the Nubes house. Luz stated that she is currently employed as a custodian with the school district and earns $971 per month; she is 42 years old. She stated that Juan works in construction, drinks, uses cocaine, and is very violent. According to Luz, Juan threatened to burn the family's house down in October 2011 so she obtained a protective order. Since that time, Juan has not provided any financial support to her or their three children.

Luz also claimed a right of reimbursement for improvements made during the marriage to a property owned by Juan in Michoacán, Mexico. Luz testified that she and Juan spent between $18,000 and $20,000 remodeling the house in Mexico.

Victor testified that he resides with his wife and children at the Nubes residence. The property was purchased in 2007 when he was 21 years old; his mother, Luz, applied for the loan because his credit was not good. The purchase price was approximately $104,000. Victor made the down payment of approximately $9,000, and over the past six years had paid between $60,000 and $78,000. Victor denied that either his mother or Juan had given him any money to make the mortgage payments since the house was purchased. Regarding improvements, Victor testified that he paid Juan $600 to install a cement slab in the backyard of the house. Prior to trial, Victor filed

a "Petition in Intervention Regarding Property Right" claiming that he is the actual owner of the Nubes property; he alternatively claimed damages in the amount of $66,477. Juan filed a motion to strike the petition in intervention; the trial court denied Juan's motion prior to the commencement of the bench trial.

At the conclusion of the bench trial, the trial court granted the divorce on the ground of cruelty. The trial court ordered the sale of the parties' homestead, with Luz receiving 60% of the net proceeds from the sale of the residence and Juan receiving 40%. Luz was awarded all of the furnishings in the home. Additionally, Luz was awarded as her separate property real property located at 3626 Nubes Drive with the caveat that she "execute any proper legal documentation to reflect the true owner Victor Manuel Juarez." As to custody, the trial court appointed the parties joint managing conservators and designated Luz as the parent having the exclusive right to establish the children's residence. Juan was ordered to pay child support in the amount of $430 per month. The trial court denied Luz's request for reimbursement for improvements made to Juan's house in Mexico. The trial court granted Luz's application for a permanent injunction, finding that there is a continued likelihood that domestic violence may occur. No party requested the trial court to enter findings of fact and conclusions of law in support of its rulings.[1]

On appeal, Juan argues that the trial court erred in (1) awarding to Luz as separate property a home acquired during the marriage; (2) making a disproportionate division of the marital estate; and (3) calculating the amount of child support.

---

[1] In a bench trial, "'where no findings of fact or conclusions of law are filed or requested, it will be implied that the trial court made all the necessary findings to support its judgment.'" *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992) (citations omitted); *Pang v. De Santis*, No. 04-08-00092-CV, 2008 WL 5170443, at *1 n.3 (Tex. App.—San Antonio Dec. 10, 2008, no pet.) (mem. op.).

## STANDARD OF REVIEW

We review most of the appealable issues in a family law case, including issues of property division incident to divorce, conservatorship, visitation, or child support, for an abuse of discretion. *See Garcia v. Garcia*, 170 S.W.3d 644, 648 (Tex. App.—El Paso 2005, no pet.). "The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. Stated differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable. The mere fact that a trial judge may decide a matter within [its] discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Id.* at 649 (internal citations omitted).

In family law cases the abuse of discretion standard overlaps with the traditional sufficiency standards of review. *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.—San Antonio 2006, no pet.). Legal and factual sufficiency are therefore not independent grounds of error; rather, they constitute factors relevant to an assessment of whether the trial court abused its discretion. *Id.* Accordingly, in considering whether the trial court clearly abused its discretion, we must review whether (1) the trial court had sufficient evidence upon which to exercise its discretion, and (2) the trial court erred in its application of its discretion. *Id.*

## AWARD OF SEPARATE PROPERTY

Juan first contends that the trial court abused its discretion in awarding to Luz a home acquired during the marriage as her separate property. Luz was awarded real property located at 3626 Nubes Drive; the trial court clarified on the record that the award was conditioned on the premise that Luz "execute any proper legal documentation to reflect the true owner Victor Manuel Juarez." "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE ANN. § 3.003(a) (West 2006); *see also Garza*, 217

S.W.3d at 548. "The degree of proof necessary to establish that property is separate property is clear and convincing evidence." TEX. FAM. CODE ANN. § 3.003(b) (West 2006); *see also Garza*, 217 S.W.3d at 548. Clear and convincing evidence is defined as that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014).

"The characterization of property as community or separate is determined by the inception of title to the property, i.e., when a party first has a right of claim to the property by virtue of which title is finally vested." *Sink v. Sink*, 364 S.W.3d 340, 344 (Tex. App.—Dallas 2012, no pet.). Separate property includes "property owned or claimed by the spouse before marriage" and "property acquired by the spouse during marriage by gift, devise, or descent." TEX. FAM. CODE ANN. § 3.001(1), (2) (West 2006).

"In order to overcome the community property presumption, the burden is on the spouse claiming certain property as separate to trace and clearly identify the property claimed to be separate." *Sink*, 364 S.W.3d at 344; *see also Garza*, 217 S.W.3d at 548. "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Sink*, 364 S.W.3d at 344; *see also Garza*, 217 S.W.3d at 548.

When considering a claim that the trial court has mischaracterized community property, we apply the standard of review enunciated in *Viera v. Viera*, 331 S.W.3d 195 (Tex. App.—El Paso 2011, no pet.):

> In reviewing an alleged characterization error, we must utilize a two-pronged approach and determine first whether the trial court's finding of separate property is supported by clear and convincing evidence and, if it is not, we must then determine whether the characterization error caused the trial court to abuse its discretion in the overall division of the community estate. Thus, a party challenging the trial court's characterization must first establish error by challenging the legal or factual sufficiency of the evidence to support the separate property

> characterization, and must then conduct a harm analysis and show that because of the mischaracterization, the overall division of the property constitutes an abuse of discretion.

*Id.* at 207 (internal citations omitted); *see also Mora v. Mora*, No. 04-12-00638-CV, 2014 WL 769441, at *3 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op.) (applying the *Viera* standard); *Nalbach v. Nalbach*, No. 04-11-00802–CV, 2013 WL 1641478, at *2 (Tex. App.—San Antonio Apr. 17, 2013, no pet.) (mem. op.) (same). If it is determined that the trial court erred in characterizing the property, we will reverse only if the "mischaracterization affected the just and right division of the community estate." *Garza*, 217 S.W.3d at 549.

We agree that the trial court erred in characterizing the Nubes property as Luz's separate property. Because the Nubes property was acquired during the marriage, it was Luz's burden to overcome the community presumption. The record before us is devoid of any evidence establishing the separate origin of the Nubes property by tracing. The record contains no testimonial or documentary evidence that Luz's separate funds were used to purchase the Nubes property. Absent evidence showing the property was acquired by means of Luz's separate funds, the evidence was insufficient to constitute clear and convincing evidence rebutting the community presumption and establishing characterization of the Nubes property as separate. *See Sink*, 364 S.W.3d at 344; *Boyd v. Boyd*, 131 S.W.3d 605, 616 (Tex. App.—Fort Worth 2004, no pet.).

However, Juan's argument nevertheless fails because he has not attempted to demonstrate how the erroneous characterization caused the trial court to abuse its discretion in the overall division of the community estate or that it had more than a de minimus impact on a just and right division of the community estate. *See Viera*, 331 S.W.3d at 207; *Garza*, 217 S.W.3d at 549; *see also Magill v. Magill*, 816 S.W.2d 530, 533-34 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (holding appellant must demonstrate that division of property is manifestly unjust and that mischaracterization of his separate property created an inequality); *Haining v. Haining*, No. 01-

08-00091-CV, 2010 WL 1240752, at *11 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, pet. denied) (mem. op.) (holding appellant must show that he was harmed by mischaracterization of community property). Juan does not allege that Luz received a disproportionate share of the community estate. In fact, Juan wholly fails to conduct a harm analysis, and we may not presume harm in this instance. *See Pace v. Pace*, 160 S.W.3d 706, 716 (Tex. App.—Dallas 2005, pet. denied) (overruling husband's mischaracterization complaint where husband failed to conduct a harm analysis; husband made "no argument as to why the property division is unfair or unjust apart from the alleged mischaracterization"); *In re Marriage of Moncey*, 404 S.W.3d 701, 715 (Tex. App.—Texarkana 2013, no pet.) (overruling husband's mischaracterization complaint where record lacked testimony or evidence showing value of mineral interest, and husband's "brief fail[ed] to address the harm caused by the court's mischaracterization"); *but see Barnard v. Barnard*, 133 S.W.3d 782, 790 (Tex. App.—Fort Worth 2004, pet. denied) (holding error in mischaracterizing separate property as community property is by definition harmful because it divests one spouse of his or her separate property). Further, our independent review of the record does not reveal that the mischaracterization had more than a de minimus effect on the just and right division of the community estate. Although the trial court erred in mischaracterizing the Nubes property as Luz's separate property, we hold that Juan has failed to show that the error was harmful, and therefore we cannot conclude that the trial court abused its discretion. *See Viera*, 331 S.W.3d at 207; *Garza*, 217 S.W.3d at 549. Accordingly, we overrule Juan's first issue.

### DISPROPORTIONATE DIVISION OF MARITAL ESTATE

Juan next argues that the trial court abused its discretion making a disproportionate division of the marital estate based on its finding that he was at fault for the break-up of the marriage because of cruelty to Luz when there was insufficient evidence to support such a finding. A trial court is charged with dividing the marital estate in a "just and right" manner. TEX. FAM. CODE

ANN. § 7.001 (West 2006); *Gardner v. Gardner*, 229 S.W.3d 747, 756 (Tex. App.—San Antonio 2007, no pet.). In dividing the marital estate, the trial court is not required to divide it equally, but may order an unequal division when a reasonable basis exists for doing so. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981); *Gardner*, 229 S.W.3d at 756; *Prague v. Prague*, 190 S.W.3d 31, 41 (Tex. App.—Dallas 2005, pet. denied). Factors to consider in dividing the estate include the parties' capacities and abilities; benefits the party not at fault would have derived from continuation of the marriage; business opportunities; education; the parties' physical conditions; the parties' financial conditions and obligations; the size of the separate estates; the nature of the property; and disparities in earning capacities and incomes. *See Murff*, 615 S.W.2d at 699. The court may also consider fault and the conduct of the errant spouse when fault grounds are pled. *Id.* at 698. Grounds for a fault-based divorce include cruelty, as pled by Luz in her counter-petition and found by the trial court. *See* TEX. FAM. CODE ANN. § 6.002 (West 2006). The circumstances of each marriage dictate what factors should be considered in division of the marital estate. *Young v. Young*, 609 S.W.2d 758, 761 (Tex. 1980).

We will not disturb a trial court's division absent a clear abuse of discretion. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 18 (Tex. App.—San Antonio 2006, pets. denied). There is no abuse of discretion if the trial court's decision is based on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). We will "consider every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing the community estate." *McSweeney v. McSweeney*, No. 04-06-00461-CV, 2007 WL 247677, at *2 (Tex. App.—San Antonio Jan. 31, 2007, no pet.) (mem. op.) (citing *Murff*, 615 S.W.2d at 699; *Prague*, 190 S.W.3d at 41).

Here, the trial court heard testimony that Juan drank to excess and used drugs and at times became physically violent towards Luz and the children. He sometimes hit the children, causing

them to bleed from the nose. She stated that these violent episodes occurred two to three times per week. Luz stated that she fled to a women's shelter on two or three occasions due to Juan's violent outbursts. She testified that she was forced to obtain a protective order after Juan threatened to burn down the family home. We conclude that this evidence is sufficient to support the trial court's finding of cruelty. *See Newberry v. Newberry*, 351 S.W.3d 552, 557 (Tex. App.—El Paso 2011, no pet.) ("A spouse's conduct rises to the level of cruel treatment when his or her conduct renders the couple's living together insupportable."); *see also Alsenz v. Alsenz*, 101 S.W.3d 648, 655 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (considering evidence that husband verbally and physically abused wife in upholding disproportionate division of marital estate in favor of wife). As such, the trial court did not abuse its discretion in awarding Luz 60 percent of the net proceeds from the sale of the marital home. Accordingly, we overrule Juan's second issue.

### CHILD SUPPORT

Finally, Juan argues that the evidence is insufficient to support the trial court's child support calculation. Juan was ordered to pay Luz $430 per month to support their three children. On the record, the trial court stated, "That amount is based on what the Court feels is an average of your annual income of $25,000." Juan argues that the testimony reflected that his average income was actually $15,000 to $20,000, not $25,000. Section 154.129 of the Family Code provides an alternative method of computing support for children in more than one household. TEX. FAM. CODE ANN. § 154.129 (West 2014). Because there were three children before the trial court, and Juan was legally obligated to support two other children, he was required to pay 25.20 percent of his net resources to Luz. *See id.* When performing a calculation pursuant to this statute, we find that $430 is 25.20 percent of $20,476. *See id.* It thus appears that the trial court misspoke when it stated that it was basing the amount of child support on income of $25,000. Regardless, the trial court had before it evidence that, on average, Juan earned up to $20,000 annually. In

- 10 -

addition, there was evidence that Juan earned $25,700 in 2010 and that he was paid approximately $97,000 in 2012. Although Juan testified that that amount was not pure profit, he did not testify as to how much he paid his employees from those earnings. Because there was evidence to support a finding of net resources in the amount of $20,476, and because child support was ordered in accordance with the statutory guidelines, the trial court did not abuse its discretion in ordering support in the amount of $430. *See Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993) (noting that trial court has discretion to set child support within the parameters established by the child support guidelines set forth in the Family Code); *see also* TEX. FAM. CODE ANN. §§ 154.121-.123 (West 2014). Juan's third issue is therefore overruled.

## CONCLUSION

Having overruled Juan's issues on appeal, we affirm the judgment of the trial court.

Rebeca C. Martinez, Justice