ACCEPTED
08-19-00304-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
3/11/2021 3:16 PM
ELIZABETH G. FLORES
CLERK

08-19-00304-CV

## No. 08-19-00304-CV

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
3/11/2021 3:16:57 PM
ELIZABETH G. FLORES
Clerk

## In the Court of Appeals for the Eighth Judicial District El Paso, Texas

**MARK ALAN BLAIR,**

Appellant,

v.

**RITA GAIL BLAIR,**

Appellee.

On Appeal from the
112th Judicial District Court, Reagan County
Honorable Pete Gomez, Jr. Presiding

## BRIEF FOR APPELLANT MARK ALAN BLAIR

Respectfully submitted,

**LAW OFFICE OF REBECCA DAVIS, P.L.L.C.**
11200 South Street, Suite 228
Weatherford, Texas 76086
TELEPHONE:      817.341.4500
TELECOPIER:     817.594.8100
rebecca@rdavislaw.com

/s/ Rebecca Davis
SBOT No. 24048422

## NO ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

**Appellant:**

Mark Alan Blair

**Appellate and Trial Counsel for Appellant:**

Rebecca Davis
Law Office of Rebecca Davis, P.L.L.C.
1200 South Main Street, Suite 228
Weatherford, Texas 76086
rebecca@rdavislaw.com
SBOT No. 24048422

**Appellee:**

Rita Gail Blair

**Trial Counsel for Appellee:**

J.W. Johnson
Law Offices of J.W. Johnson & Jana Johnson, P.L.L.C.
125 South Irving Street
San Angelo, Texas 76903
jlo@johnsonlawoffices.org
SBOT No. 10757600

Jana Johnson
Law Offices of J.W. Johnson & Jana Johnson, P.L.L.C.
125 South Irving Street
San Angelo, Texas 76903
jlo@johnsonlawoffices.org
SBOT No. 24076464

**Appellate Counsel for Appellee:**

Jana Johnson
Law Offices of J.W. Johnson & Jana Johnson, P.L.L.C.
125 South Irving Street
San Angelo, Texas 76903
jlo@johnsonlawoffices.org
SBOT No. 24076464

# TABLE OF CONTENTS

Page

Identity of Parties and Counsel.................................................... i

Index of Authorities.................................................................. ii

Statement of the Case............................................................... vi

Issues Presented........................................................................ vii

Statement of Facts.................................................................... 1

    I.    Background

    II.   Tracing of Appellant's Real Properties

    III.  Appellee's Reimbursement Claims

    IV.  Appellant's Claims of Fault in the Marriage

Summary of the Argument........................................................ 5

Standard of Review................................................................... 7

Arguments............................................................................... 9

    I.    Appellant's Constitutional Rights Were Violated

        A. Trial Court's Award of Appellant's Separate Property to Appellee

        B. The Violation of Appellant's Constitutional Rights Resulted in an Unfair and Inequitable Apportionment of the Community Estate

        C. Transmutations of Separate Property Do Not Convert Separate Property into Community Property

    II.   Appellee's Pleas for Reimbursement Are Legally and Factually Insufficient

    III.  Appellee's Claims for Fault in Dissolution of Marriage Are Legally and Factually Insufficient

        A. Appellee's Accusations of Appellant's Alleged Use of Illegal Substances

        B. Appellee's Accusations of Appellant's Cruel Behavior

        C. Appellee's Accusations of Appellant's Adulterous Affairs

Prayer…………………………………………………………….. 20

Certificate of Compliance…………………………………………... 21

Certificate of Service…………………………………………….. 21

## INDEX OF AUTHORITIES

**Constitutional Provisions**

TEXAS CONSTITUTION ART. XVI, SECTION 16

**Statutes and Rules**

TEX. FAM. CODE ANN.

§ 3.003 ..................................................................................
§ 7.001 ..................................................................................

**Cases**                                                                    **Page(s)**

Burney v. Burney,
  225 S.W.3d 208, 215 (Tex. App.—El Paso 2006) ...........................

Celso v. Celso,
  864 S.W. 652, 655 (Tex. App.—Tyler 1993) ................................

Chafino v. Chafino,
  228 S.W. 467,473 (Tex. App.—El Paso 2007) .............................

Downer v. Aquamarine Operators, Inc.,
  701 S.W.2d 238, 241-42 (Tex. 1985) .......................................

Garcia v. Garcia,
  170 S.W.3d 644, 648 (Tex. App.—El Paso 2014) ..........................

Hilliard v. Hilliard,
  725 S.W.2d 722,723 .........................................................

Jacobs v. Jacobs,
  687 S.W. 731, 732 (Tex. 1985) .............................................

McKinley v. McKinley,
  496 S.W. 540, 543 (Tex. 1973) ............................................

Murff v. Murff,
  615 S.W.2d 696, 699 (Tex. 1981) ..........................................

In re Marriage of McCoy and Els ..............................................
  488 S.W.3d 430 (Tex. App.—Houston [14th Dist.] 2016)

Lucy v. Lucy,
  162 S.W.3d 770 (Tex. App.—El Paso 2005) ...............................

Richardson v. Richardson,
     424 S.W.3d 961 (Tex. App.—El Paso 2014)...............................

Sprick v. Sprick,
     25 S.W.3d 7, 11 (Tex. App.—El Paso 1999)...............................

Tarver v. Tarver,
     394 S.W.2d 780, 783 (Tex. 1965)..........................................

Vallone v. Vallone,
     644 S.W.2d 455 (Tex. 1982)..............................................

Viera v. Viera,
     331 S.W.3d 195, 206 (Tex. App.—El Paso 2011)........................

## STATEMENT OF THE CASE

*Nature of the Case:* On June 19, 2015, in Reagan County, Appellee filed for divorce from Appellant. CR.6. Prior to the marriage, Appellant worked as a home builder who bought and sold various pieces of real property, some of them raw and some with homes situated upon them. CR.8-14. Also, prior to the parties' marriage, Appellant purchased approximately sixty-three acres of property located in Parker County, Texas. 2CR.18. The parties built a home on the sixty-three acres. Appellee sought reimbursement for unproven expenses and unproven labor allegedly exerted on her part during the construction of the home.

*Course of Proceedings:* On June 6, 19, 2015, Appellee filed her *Original Petition for Divorce*. CR.6. On July 6, 2015, Appellant filed his *Original Answer to Petitioner's Original Petition for Divorce*, CR.23, as well as his *Original Counterpetition for Divorce*. CR.26. On October 2, 2015, Appellee filed her *First Amended Original Petition for Divorce*. CR.50. On October 5, 2015, Appellant filed his *First Amended Original Counterpetition*. CR.76. On July 11, 2018, the first day of the parties' bench trial was held. CR.1-137. On November 20, 2018, the second day of the parties' bench trial was held. SV2RR.8-94. On December 3, 2018, closing arguments from counsel from Appellant were heard. 3RR.4-13. In February 2019, closing arguments from counsel for Appellee were heard. On February 7, 2019, the trial court issued its written ruling. 2SV1RR. 4-9. On September 6, 2019, the trial court entered its *Final Decree of Divorce*. CR.267-82. On September 26, 2019, Appellant filed his *Motion for New Trial*. CR.285.

*Trial Court:* 112th Judicial District Court, Reagan County
Honorable Pete Gomez, Jr. Judge Presiding

# ISSUES PRESENTED

**ISSUE I**   Whether or not the trial court committed abuse of discretion when it awarded a portion of Appellant's separate property to Appellee.

    A. Whether the trial court's abuse of discretion caused harm to Appellant when his constitutional rights were violated while, at the same time, being ordered to assume the entire debt on his separate property.

    B. Whether the violation of Appellant's constitutional right resulted in an unfair and inequitable apportionment of the community estate.

    C. Whether transmutations of separate property convert that separate property into community.

**ISSUE II:**   Whether Appellee met her burden of proof in her claims for reimbursement.

**ISSUE III:**   Whether Appellant sufficiently substantiated her claims against Mark for the dissolution of the marriage.

## STATEMENT OF FACTS

### I.     BACKGROUND

From 1988 until 1991, Appellant, Mark Alan Blair, was a home builder who invested in real property: some raw land, some restoration of homes, and the construction of some "spec" homes. 2RR.20, 27. From 1991 until 1999, Mark, while still building homes on his off duty hours, worked as a law enforcement officer. 2RR.38. In 1999, Mark returned to the construction business and continued in the construction business, in form or another, until now.

On October 26, 2002. Mark married Appellee, Rita Gail Blair. CR.7. No child was born of their marriage, CR.7, although both Mark and Rita have several grandchildren/great-grandchildren. From the time they married until sometime in 2010, when the couple moved to Big Lake, Texas, the parties resided in Parker County, Texas 2RR.12.

Several times during her testimony, Rita testified that, the entire time she and Mark were married, she worked with him in the construction business. One such claim reads as follows, "I went to work with him every day. We built houses." 2RR.14. And, in another such claim, Rita testified, "…I was working on a home. He was working on another home, finishing it up." 2RR4. On Mark and Rita separated in June 2015. CR.7.

1

II. Tracing of Appellant's Separate Real Properties

A. 5197 Zion Hill Road

In 1984, Mark purchased 5197 Zion Hill Road, Weatherford, Texas. 2RR.8-9. Prior to his marriage to Rita, Mark sold the Zion Hill property.

B. 123 Vaughn Lane

After Mark sold his Zion Hill property, and before he married Rita, one of the next pieces of property purchased by Mark was 123 Vaughn Lane, Weatherford, Texas. 2RR.10-11. On September 30, 1999, Mark purchased this home—which became his residence—for $51,750.00. Rita acknowledges the Vaughn Lane property was Mark's separate property. 2SRR15. On June 1, 2001, Mark sold the Vaughn Lane residence for $150,000.00 and paid off the mortgage held by Pinnacle Bank. 2RR.11. On June 4, 2001, Mark received $80,466.08 in equity from this sale which was deposited directly into Texas Bank, account number xxx7391. 2RR.11.

C. 2531 Carter Road

The proceeds Mark received from the sale of the Vaughn Lane property were deposited and earmarked for the commencement of the construction on Mark's home at 2531 Carter Road which would eventually become 2525 Carter Road, Springtown, Texas.

2

III. Appellee's Reimbursement Claims

A. The Community Estate Is Due Reimbursement for Funds and Assets Expended by the Community Estate for the Benefit of Appellant's Separate Estate

This claim is made for the reimbursement of "funds and assets" that were depleted from the community estate. This claim further pleads that, if reimbursement is not made to the community estate, then Mark's separate estate will enjoy unjust enrichment.

B. Appellee's Separate Estate Is Due Reimbursement from the Community Estate

This claim is made for the reimbursement of "funds and assets" that were depleted by Appellee's separate estate for the benefit of the community estate. This course of reimbursement would, of course, require proof that Appellee had expended funds and assets for the benefit of the community estate.

C. Appellee's Separate Estate Is Due Reimbursement from Appellant's Separate Estate

This claim is made for the reimbursement of "funds and assets" that were depleted by Appellee's separate estate for the benefit of Appellant's separate estate. Again, this course of reimbursement would, of course, require proof that Appellee had expended funds and assets for the benefit of the community estate.

IV. Appellee's Claims of Fault in the Marriage

A. Adultery

Although Rita tried to prove that Mark committed adultery during their marriage, she falls extremely shy of her burden of proof (which shall be addressed further in arguments section below).

B. Cruelty

Although Rita claims Mark treated her cruelly during their marriage, she falls extremely shy of her burden of proof (which shall be discussed further in arguments section below) in this regard as well.

C. Use of Illegal Substances

Although Rita claims Mark engaged in the use of illegal substances during their marriage, once more she falls incredibly short of meeting her burden of proof.

## SUMMARY OF THE ARGUMENT

The trial court erred when it awarded Mark's separate property to Rita.

Both the Texas Constitution and the Texas Family Code dictate that property owned by a spouse prior to the marriage shall remain that spouse's separate property. This error resulted in an unfair and inequitable division of the community estate. Furthermore, separate property shall retain its character through a series of exchanges and mutations. Thus, regardless of any loans borrowed and signed by both spouses, promissory notes executed by both spouses, or liens executed separate property remains separate property.

The standard rule of thumb when dividing the marital estates is "community in / separate out." This presumption applies to both assets *and* liabilities of community property.

There are three elements that constitute a reimbursement claim: (a) a contribution was made by one marital estate to another; (b) the contribution was reimbursable; and (c) the value of the contribution. Reimbursement is an equitable remedy and court of equity are required to look at all facts and circumstances before determining a fair, just and equitable division of the marital estates. A spouse seeking to prevail on a claim for reimbursement must establish the value of said claim.

5

The trial court's failure to reimburse Appellant's separate estate resulted in an unjust and grossly disproportionate division of the community estate.

## STANDARD OF REVIEW

This Court, as most Texas Courts of Appeals, "reviews appealable issues in a family law case, such as property division incident to divorce or partition, conservatorship, visitation, and child support, under an abuse of discretion standard." Richardson v. Richardson, 424 S.W.3d 961 (Tex. App.—El Paso 2014) (citing Garcia v. Garcia, 170 S.W.3d 644, 648 (Tex. App.—El Paso 2005). To ascertain whether or not an abuse of discretion has occurred, the reviewing court must determine "whether the trial court acted without reference to any guiding rules and principles." Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

The Texas Family Law Code requires a trial court to "divide the estate of the parties in a manner that the Court deems is just and right…" TEX. FAM. CODE Ann. § 7.001. While the trial court's division of the marital estates must be equitable, law does not dictate the court to divide the community property equally. Chafino v. Chafino, 228 S.W.3d 467, 473 (Tex. App.—El Paso 2007).

For this Court to determine whether or not the trial court abused its discretion in the division of the estate of the parties, a two-pronged test is used: (1) Did the trial court have sufficient information upon which to exercise discretion, and (2) did the trial court abuse its discretion by making a property division that was manifestly

7

unjust or unfair? Burney v. Burney, 225 S.W.3d 208, 215 (Tex. App.—El Paso 2006).

The Murff v. Murff court set forth a list of factors the trial court may consider in dividing the marital estate: "(1) the spouses' capacities and abilities; (2) benefits which the party not at fault would have derived from the continuation of the marriage; (3) business opportunities; (4) relative physical conditions; (5) relative financial conditions; (6) disparity of ages; (7) size of separate estates; (8) the nature of the property; and (9) disparity of earning capacity. Murff v. Murff, 615 S.W.2d 696, 699 (Tex. 1981).

If this court finds reversible error that materially affects the trial court's "just and right" division of the property, [the court] must remand the entire community estate for a new division. *See* Jacobs v. Jacobs, 687 S.W.2d 731, 732 (Tex. 1985).

When the trial court does not make findings of fact and conclusions of law, this Court "must presume the trial court made all the findings necessary to support the judgment." Sprick v. Sprick, 25 S.W.3d 7, 11 (Tex. App.—El Paso 1999).

## ARGUMENTS

### I.     Appellant's Constitutional Rights Were Violated.

#### A.     The Trial Court's Award of Appellant's Separate Property to Appellee

The Texas Constitution demands as follows: "All property, both real and personal, of a spouse owned or claimed before a marriage…shall be the separate property of that spouse." TEX. CONST. ART. XVI, § 16.

The trial court's judgment also failed to comport with section 3.001 of the Texas Family Code: "A spouse's property consists of… the property owned or claimed by the spouse before marriage…" TEX. FAM. CODE ANN. § 3.001.

The burden of proof that must be met to assure that a party is guaranteed these rights is as follows: "Absent clear and convincing evidence to the contrary" these rights are unequivocal. TEX. FAM. CODE ANN. § 3.003. The definition of "clear and convincing proof" is defined by the Viera court: "Clear and convincing evidence is the proof that produces in the mind of the trier a firm belief or conviction as to the truth of the allegations sought to be established." Viera v. Viera, 331 S.W.3d 195, 206 (Tex. App.—El Paso 2011).

Parties claiming certain property as their separate property have the burden of rebutting the presumption of community property. McKinley v. McKinley, 496 S.W.2d 540, 543 (Tex.1973). To do so, they must trace and clearly identify the property in question as separate by clear and convincing evidence. Id. (citing Tarver

9

v. Tarver, 394 S.W.2d 780, 783 (Tex. 1965)).

Tracing involves establishing the separate origin of the disputed property through evidence showing the time and means by which the spouse originally obtained possession of the property. Hilliard v. Hilliard, 725 S.W.2d 722, 723 (Tex. App.—Dallas 1985).

In meeting his burden of proof to be assured of this constitutional right addressing separate property, Mark commenced tracing his seed money to construct his residence at 2525 Carter Road (which was carved out of 2531 Carter Road) when he purchased his first piece of real property in 1984. This property was located at 5197 Zion Hill Road, Weatherford, Texas, and Mark paid $34,500.00 for this property. 2RR.8-10. Mark testified this property was first financed by Rural Development. 2RR.9. On December 1, 1993, Mark refinanced this property with mortgage holder Texas Independent Bank for $32,500.00. 2RR.9-10. Mark then sold this property and owner financed it. 2RR.10.

After selling the Zion Hill Road property, Mark next financed 123 Vaughn Lane—which became his new residence—for $51,570.00. 2RR. 10-11. On June 1, 2001, Mark sold the Vaughn Lane property for $150,000.00. 2RR.11. After paying off the mortgage on Vaugh Lane, Mark made $80,466.00 in equity which he directly deposited into Texas Bank. 2RR.11. This was the seed money to be held until Mark

10

was able to commence the construction of his home at what would become 2525 Carter Road. The Texas Bank account, xxxx391, is the bank account into which Mark made his business deposits—including, but not limited to, the equity check from the sale of Vaughn Lane and the payments on the Carter Road properties. 2RR.45, 49.

During cross-examination, Mark again clarified the separate nature of the funds from the sale of Vaughn Lane—the seed money to commence construction of the 2525 Carter Road residence. 2RR.54-55. Mark also clarified the nature of the account into which he deposited his business deposits—pre-marriage. 2RR.55-56; 59-61.

On January 10, 2001—before the parties married on October 26, 2002—Mark purchased approximately sixty acres of land located at 2531 Carter Road, with a farmhouse situated on this acreage, from Oliver Wilhite for $120,000.00. SV3RR.P.3[1] The address for this property is 2531 Carter Road. 2RR.17. Rita claims this property is community property. CR.237. Rita acknowledges that the 2531 Carter Road Property is Mark's separate property.

---

[1]The Petitioner's exhibits proffered in the Reporter's Record are not numbered by page. There are a few "Petitioner's Exhibit ____" stickers. However, for the most part, Petitioner's exhibits are numbered in handwritten print at the bottom of the first page of each page. Accordingly, references to all exhibits will be as follows: handwritten print at the bottom of the first page of each exhibit (i.e., "P4").

Mark commenced construction of his home on June 1, 2001. 2RR.15-16. It took Mark, with manual labor provided by Rita, 1RR.35, approximately six to seven years to complete construction of the home. 2RR.21. When the construction finally completed, and the farmhouse was no longer the only structure located at 2531 Carter Road, a new address was assigned to the new residence: 2525 Carter Road, Springtown, Texas.

Having proven that the property and the residence is Mark's separate property, the trial court denied Mark of his constitutional rights regarding separate property. The denial of this constitutional right resulted in an unfair and inequitable apportionment of the community estate.

The parties eventually found themselves owing a significant amount of debt (credit cards, mortgage payments, etc.). 2RR.29. In 2007, when Mark was unable to secure a loan from a financial institution, and was facing the possibility of foreclosure on 2531 Carter Road property, Mark had no recourse but to borrow $200,000.00 from his parents. 2RR28-29. Mark and Rita both signed off on the promissory note for $200,000.00.

**B.    The Violation of Appellant's Constitutional Rights Resulted in an Unfair and Inequitable Apportionment of the Community Estate.**

Because the trial court deprived Mark of his separate property (of which the court awarded fifty percent ownership to Rita), and then ordered him 100 percent

12

financially responsible for all debt owed on that property (and zero percent of that debt awarded to Rita), the trial court rendered an unfair and inequitable apportionment of the community estate. The debt owed on Mark's separate property is $36,942.00. As the transcript reflects, Mark traced his separate properties down to dates of purchases, dates of sales, dates of deposits, bank account numbers: the 2525 property was clearly proven to be Mark's separate property.

In essence, the trial court denied Mark his constitutional rights by deprived him of ownership of his separate property, and saddling him with 100 percent of the debt owed on the property of which he was deprived. If this is not the epitome of an unfair and inequitable apportionment of a community estate, perhaps there shall never be any such inequity.

## C. Transmutations of Separate Property Do Not Convert That Separate Property into Community Property.

Whether the property be community property or separate property, the property shall retain its original character so long as the party claiming separate ownership can overcome the presumption of community property by tracing the assets back to property that—due to its time and/or method of acquisition—is separate in character. Celso v. Celso, 864 S.W.652, 655 (Tex. App.—Tyler 1993).

13

Rita testified that, in her opinion, [once] 2531 Carter Road was refinanced, itbecame community property. 2SRR.28. As the Celso court clarified, such is not the

case. None of Mark's separate properties were converted to community property simply due to transmutations. Transmutations of separate property do not convert that separate property into community property.

## II. Appellee's Pleas for Reimbursement Are Legally and Factually Insufficient

Rita pleaded for reimbursements of three types: (1) the community estate is due reimbursement for funds and assets expended by the community estate for the benefit of appellant's separate estate; (2) the community estate is due reimbursement for funds and assets expended by the community estate for the benefit of appellant's separate estate; (3) the community estate is due reimbursement for funds and assets expended by the community estate for the benefit of appellant's separate estate.

Reimbursement is equitable in nature. Courts of equity are bound to look at all of the facts and circumstances involving reimbursement claims in order to determine what is fair, just, and equitable. Penick v. Penick, 783 S.W.2d 194 (Tex. 1988).

The McCoy and Els court held that, in order to prevail on a reimbursement claim, the value of the claim must be established. In re Marriage of McCoy and Els,

14

488 S.W.3d 430 (Tex. App.—Houston [14th Dist.] 2016. This court has addressed the reimbursement on numerous occasions and, in doing so, has set forth several formulaic approaches to determining the equitable dollar amount for reimbursement. *See* Lucy v. Lucy, 162 S.W.3d 770 (Tex. App.—El Paso 2005; Richardson v. Richardson, 424 S.W.3d 691 (Tex. App.—El Paso 2014). The Texas Supreme Court has analyzed this issue in the landmark case of Vallone v. Vallone, 644 S.W. 455 (Tex. 1982). The one common denominator in these cases regarding reimbursement is the party seeking reimbursement has to provide tangible proof that such a claim is just. Rita has egregiously failed to do so—despite her attempts.

In several different approaches, Rita attempted to prove a claim for reimbursement regarding her funds she had provided towards the construction of the residence at 2525 Carter Road. For example, Rita claimed she "built the road back to where [they] were going to build the house. [She] paid for the septic system that went to the house out of [her] pocket." 2SRR.16. However, when questioned by Mark's counsel regarding the production of receipts for the road surfacing and the septic system, she responded that "Mark should have those." 2SRR.82. When presented with Mark's check number 2198 and asked to testify as to how check read, her response was, "This shows where he paid me back for the road and the septic system." 2SRR.83. When pressed as to whether she really paid for the road and the

15

septic system, she contended she did make those payments. And, when further pressed, "But he reimbursed you?"—she finally responded, "Okay." 2SRR.83. It is clear Rita had no proof whatsoever as to *any* funds she expended on the residence in question.

Rita apparently attempts to claim reimbursement for time, toil, and labor—claiming she "built the road back to where [they] were going to build the house. 2SRR.16. On direct examination, Rita testified that she and Mark worked side-by-side in his home construction business. 2SRR.14. However, Rita also testified that that she had been unemployed for two years—without any efforts to find employment in the construction business. 2SRR.92. Her explanation for her lengthy unemployment was the need to care for her very ill granddaughter and newborn great-grandchild.

It was Rita's burden of proof to establish how many dollars she contributed to the construction of the new residence as well as how many hours she contributed. Not only could she do neither, but she was far less than truthful about monetary contributions she had made towards the construction of the home.

Rita's claims for reimbursement fall well shy of legal and/or factual insufficiency, and, therefore, should have been denied by the trial court

16

## III. Appellee's Claims for Fault in the Dissolution of the Marriage Are Legally and Factually Insufficient

While it is apparent that Rita tried everything possible to place fault for the breakup of the marriage on Mark, she offered scanty—if any—proof of such claims.

### A. Appellee's Accusations of Appellant's Alleged Use of Illegal Substances

Rita attempted to paint a picture of Mark as a pot smokin', cocaine snortin' ne'er do well. When asked by her counsel if she had ever "*seen* Mark do any illegal drugs," she responded, "He did a lot of, very regularly did pot. And another instance he *admitted* to doing cocaine." 2SRR.35-6. Rita tried to connect Mark's drug use to him being "very, very moody." 2SRR.36.

### B. Appellee's Accusations of Appellant's Cruel Behavior

Appellee testified she "went to Mark's parents—because he got violent." 2SRR.36. Mark has never been charged with possession of any illegal substances. To the contrary, he worked as a certified police officer for nine years and voluntarily resigned from the force. Rita testified that, when Mark became physical with her in Springtown, she went to the Parker County Sheriff's Office, but "his buddies…pretty much talked to me about not filing charges, work it out…" 2SRR.37. The court erred in overruling an objection as to admitting third party hearsay regarding alleged statements made by Mark's "buddies" at the sheriff's

17

department. Contrary to the court's ruling, the hearsay was not a party admission: It as, indeed, third party hearsay. 2SRR.37-8. The record is silent as to any police reports being filed; any medical care being sought; any counseling being undertaken; any 911 emergency calls.

Rita testified to an incident that occurred in Big Lake, Texas when Mark allegedly became physically abusive toward her. A close examination of the record shows that, under cross-examination, it took fifteen lines of questioning/testifying for Rita finally admit that she went to the Reagan County Sheriff's Department because [her] attorney instructed her to do so. 2SRR.88. Rita testified that there was a hearing on this alleged abuse report that she could not attend because she was to appear in Fort Stockton on the same day for a hearing in the divorce matter. 2SRR.89. When asked if she "would be surprised to know the county attorney had dismissed her alleged report of physical abuse, her response was, "I don't know." 2SRR.90. When asked if she kept up with the report she filed, or if she called the county attorney's office to follow up, she responded, "I didn't know to call the county attorney." 2SRR.91. The evidence of any physical abuse against Rita at the hands of Mark Blair is both legally and factually insufficient and should not have been given weight as to the fault in the breakup of the marriage.

**C. Appellee's Accusations of Appellant's Adultery**

Appellee claims Appellant committed adultery and claimed to have "accidentally bumped the computer," and pornographic websites immediately appeared. 2SRR.33. Common sense would lead a prudent person to acknowledge that looking at pornographic websites does not an adulterer make. Rita next claimed to have "pictures and text messages" of Mark's attempts to hook up with random women from random pornographic websites. 2SRR.33. Rita's counsel sought to admit documents that allegedly came from Mark's computer. After objection as to no connection whatsoever of these documents to Mark, the documents were ruled inadmissible. 2SRR.34-5. No text messages were ever proffered.

The evidence of any adultery committed by Mark is both legally and factually insufficient and should not have been given weight as to the fault in the breakup of the marriage.

## PRAYER

The Court should reverse the trial court's award of the marital estate and remand the said estate for the award of a new division.

Respectfully submitted,

**LAW OFFICE OF REBECCA DAVIS, P.L.L.C.**
1200 South Main Street, Suite 228
Weatherford, Texas 76086
TELEPHONE:     817.341.4500
TELECOPIER:    817.594.8100
rebecca@rdavislaw.com

/s/ Rebecca Davis
 SBOT No. 24048422

20

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 4,750 words excluding the portions of the brief exempted by Rule 9.4(a)(1).

/s/    Rebecca Davsi

## CERTIFICATE OF SERVICE

On March 11, 2021, this document was served electronically on Jana Johnson, counsel     for     Appellee,     via     electronic     mail     messaging (jlolaw@johnsonlawoffices.org) and via Texas efiling.

# APPENDIX

REPORTER'S RECORD
2ND SUPPLEMENT VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. CV-01870
APPELLATE CAUSE NO. 08-19-00304-CV

IN THE MATTER OF   ) No. 08-19-00304-CV
THE MARRIAGE OF    )
          ) Appeal from the
          )
          ) 112th District Court
          )
RITA GAIL BLAIR    )of Reagan County, Texas
AND         )
MARK ALAN BLAIR    )  (TC# CV01870)

---

**COURT'S RULING**

---

On the 7th day of February, 2019, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Pedro Gomez, Jr., Judge Presiding, held in Big Lake, Reagan County, Texas.

Proceedings reported by computerized stenotype machine.

O-R-I-G-I-N-A-L

**APPEARANCES**

Mr. J.W. Johnson (not present)
SBOT NO. 10757600
The Johnson Law Offices
125 S. Irving Street
San Angelo, Texas 76903
Telephone: 325-659-2542
Counsel for Petitioner

Ms. Rebecca Davis (not present)
SBOT NO. 24048422
Law Office of Rebecca Davis, PLLC
111 W. Akard St
Weatherford, Texas 76086-5302
Telephone:  817-341-4500
Counsel for Respondent

VOLUME 1

Court's Ruling

February 7, 2019

                                              PAGE  VOL.
Court's Ruling .................................4     1
Reporter's Certificate ........................10    1

THE COURT: Okay. This is 1870, in the matter of the marriage of Rita Gail Blair and Mark Alan Blair.

I'm in the courtroom in Big Lake, Texas; and I'm going to render my decision on the Blair matter. Both sides have rested and closed. Both sides were given an opportunity to make closing statements.

I find that I have jurisdiction over the parties and of the action. I find that there were no children born to the marriage. None were adopted or are expected.

I find that the -- that the following division of the estate is a fair and equitable one concerning the parties, and what I am going to do for the attorneys so that they can follow along in preparing the decree -- I am actually using both inventories that were provided by the parties. However, I'm actually going to be making reference mostly out of the Mark Alan Blair inventory and appraisement since that's the one that I was working off of; but I did actually use both of them to make sure that I included all of the property.

So, I'm going to go down each -- each page starting with the first page, No. 1, the -- the property at 300 North Main; Springtown, Texas, I am going to

award that to the petitioner with any debt related to same and -- and all contents contained in -- in that property. In -- I am also going to award to her the $9915.89 that are currently in the registry of the Court. I am awarding the -- the property on 300 North Main Street -- and I've taken into consideration and -- and -- and making a contribution to her for her portion of the community contribution to his separate property on the Carter Road property that -- that I'm later going to find is -- is his separate property. The 99 -- the 9915.89 I am awarding to her in consideration for Mr. Blair expending part of the coin collection during the pendency of this lawsuit.

Going on to page No. 2 -- No. 2 at the top -- the -- the $3,090.18 that is in the First Financial Bank savings account, I'm going to award half to each. Going to No. 3, the $1750.45 that is in the First Financial Wow checking account, I am going to award half to each. Going to No. 8, the 1970 Chevy Corvette, I'm going to award to her as her separate property with any -- any debt related to same.

I am -- going to page 3, No. 2, I will award to him the 2003 Pace Trailer with any debt related to same. No. 4, I'm going to award to him as -- as his separate property. I'm also going to award to him the

2010 Ford Raptor with any debt related to same.

Going to page 4, I am going to award No. 6, the 2003 Big Sky 36 foot, 3670RV to her with any debt related to same. I am going to award the 1992 PJ Trailer to him with any debt related to same. She is awarded the 1996 Dodge I ton -- 1-ton Dually with any debt related to same, and that -- that is actually her separate property, and I so find. I will award to him the 2000 Jeep Wrangler that is on page 5, No. 9.

Going to No. 10, Household Furniture, Furnishings, and Fixtures -- all of the items listed in number -- No. 1, I will award to him as his separate property. The number -- on No. 2, page 6 going into No. 7 -- everything in No. 2 I will award to her as her separate property. The electronics and computers in the No. 1, I will award to him. The No. 2 I will award to her.

Going into page 8, the No. 1 -- the miscellaneous declarations and art/paintings, I am going to award half and half to each. The No. 2 I am going to award to her. Going to 13 on page 8, No. 1, knife collection I am going to award to him. The S-a-i-g-a, Saiga 12 Laser I am going to award to her, the two Ammo drums to him. The 30.06 Bull barrel I will award to her. The Smith & Wesson 12 gauge I will award to him.

The Smith & Wesson 19 -- 12 gauge I will award to him. The 45 Witness I will award to her. The Schrade, S-c-h-r-a-d-e, Waldon collection of knives, I will award to him. The Ruger M77 Mark II and the 22-250 to her as her separate property. I'm going to award to her the GLOCK 17 with laser. Also, I will award to her the -- the .22 Savage rifle.

I was not clear as to who the two acoustic guitars -- whose separate properties those -- those were gifted to one of the parties. Whoever that -- the two acoustic guitars were gifted to, I award to that person as their separate property. I am going to award to her all of the property that is in the shed at 2531 Carter.

Going to page 9, No. 14, in No. 2 -- I'm going to award everything in No. 2 to her. I'm going to award one-half of each -- to each party the tools that are located on -- at the Springtown home. Moving to page 10, 15(1) I will award to him.

Going to No. 11, No. 19(A)(1), if that is the amount still owing on the property awarded on Main Street, I am going to order that -- that she continue making those payments. He is ordered to pay the No. 19(A)(2). He is ordered to pay 19(A)(3). As to the Federal, State, and Local tax liability, I'm ordering that each party pay 19(B)(1), one-half each

with however limited authority I have in doing that.

I find -- I make a finding that the property at 2525 Carter Road is, in fact, community property. The -- the property -- the real property will continue being jointly owned by each party, and I believe that most of the contents I've made a ruling on. I will also order that if the parties can agree on a mutual fair market value, that one party can buy out the other. If not, whatever the fair market value that they agree to, the other -- judgment will -- will -- I will render a judgment in that amount in favor of the wife with a judgment in that amount at 6 percent interest to be paid at $1500 per month until paid. I am going to order on page 13 that the wife pay the -- the 23(1), 23(2), 23(3), and (4).

I am ordering that -- that the court reporter transcribe my rulings and provide to both parties. I am going to order that -- that Ms. Davis prepare the decree, and I hereby grant the divorce.

We're adjourned on this matter.

(Recess taken)

THE COURT: The Court is back on the record.

I am going to order that both parties pay for the transcription of this -- of this record -- of

this ruling to my court reporter.

We're adjourned on this matter.

(Proceeding concluded)

STATE OF TEXAS        )
                      )
COUNTY OF REAGAN      )

I, Corina E. Lozano, Official Court Reporter in and for the 112th District Court of Reagan County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered causes, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $ 150.00 and was paid by Ms. Rebecca Davis.

WITNESS my hand this the 1st day of March, 2021.

/s/Corina E. Lozano
_____

Corina E. Lozano, CSR, RPR
Texas CSR 8861
Expiration: 02/28/2023
Official Court Reporter
112th Judicial District Court
One East Main Street
Bellville, Texas 77418
Telephone:  409-771-2562

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rebecca Davis
Bar No. 24048422
rebecca@rdavislaw.com
Envelope ID: 51400135
Status as of 3/11/2021 3:29 PM MST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jana Johnson | 24076464 | jlo@johnsonlawoffices.org | 3/11/2021 3:16:57 PM | SENT |

Associated Case Party: MarkR.Blair

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rebecca Davis | | rebecca@rdavislaw.com | 3/11/2021 3:16:57 PM | SENT |
| Sarah Montgomery | | sarah@rdavislaw.com | 3/11/2021 3:16:57 PM | SENT |