

# NUMBER 13-21-00377-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE MATTER OF THE MARRIAGE OF ROGELIO GUERRA AND SUSAN RABEL GUERRA

On appeal from the 197th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva**
**Memorandum Opinion by Justice Benavides**

Appellant Rogelio "Rocky" Guerra (Rocky) appeals from a final decree of divorce that dissolved his marriage to appellee Susan Rabel Guerra (Susan). By five multifarious issues, Rocky argues that the trial court erred by: (1) mischaracterizing certain items of separate property as community property, and vice versa; (2) dividing the community estate in a manner that was not just and right; (3) incorrectly determining Rocky's claims for reimbursement; (4) failing to award him reasonable attorney's fees; and (5) incorrectly

determining post-judgment motions. We affirm.

## I.    BACKGROUND

Rocky and Susan married on August 26, 2017. On May 2, 2019, Rocky filed for divorce. After Rocky filed for divorce, Susan withdrew $24,000 from their joint bank account and deposited it into a separate bank account. Rocky later amended his petition to include multiple claims for reimbursement.

A final hearing was held on April 6, 2021, and the trial court signed its initial final decree of divorce on June 2, 2021. In its original decree, the trial court granted, *inter alia*, a $24,000 reimbursement award solely to Rocky. On June 23, 2021, Susan filed a motion for reconsideration and clarification of the final decree of divorce. In her motion, Susan asked the Court to modify its reimbursement $24,000 to $12,000.

The trial court held a hearing on Susan's post-judgment motion on August 9, 2021. At the hearing, over Rocky's objection, the trial court granted Susan's oral motion for leave to modify her post-judgment motion to also include a request that the court confirm Susan's retirement accounts as her separate property.

On August 16, 2021, the trial court signed a "Corrected Amended Final Decree of Divorce." In this decree, the trial court divided the financial assets of the community estate as follows:

| Awarded to Susan: | Awarded to Rocky: |
|---|---|
| • $54,812.36 from Susan's Nationwide retirement account; | • $54,812.39 from Susan's Nationwide retirement account; |
| • $2,751.00 from Susan's Charles Schwab account; | • $2,750.00 from Susan's Charles Schwab account; |
| • $2,666.41 from Susan's Slavic retirement account; | • $2,666.42 from Susan's Slavic retirement account; |

2

- $233,717.50 from Rocky's Dell 401(k) accounts; and
- $40,563.45 from Rocky's bank accounts.

- $919,946.76 from Rocky's Dell 401(k) retirement account; and
- $40,563.45 from Rocky's bank accounts.

The trial court also awarded the community estate a reimbursement credit of $24,000, from which each party was entitled to $12,000. Thus, the total value of the community estate was $1,376,849.74. Susan received a total of $346,510.72, or approximately 25% of the community estate. Rocky received a total of $1,030,339.02, or approximately 75% of the community estate. The trial court also confirmed Susan's LPL retirement account and her Follett retirement account as her separate property.

On September 15, 2021, Rocky filed a motion to correct, reform, or modify the judgment. The court held a hearing on Rocky's motion on October 18, 2021, but it was overruled by operation of law on November 1, 2021.

This appeal followed.

## II.    CHARACTERIZATION OF PROPERTY

Rocky argues that the trial court incorrectly characterized certain items of his separate property as belonging to the community estate and incorrectly confirmed certain items of property as being Susan's sole and separate property.

### A.    Applicable Law & Standard of Review

Separate property includes "property owned or claimed by the spouse before marriage." TEX. FAM. CODE ANN. § 3.001(1). Separate property is not subject to division in a divorce. *Cameron v. Cameron*, 641 S.W.2d 210, 215 (Tex. 1982). However, "[p]roperty possessed by either spouse during or on dissolution of marriage is presumed to be

3

community property." TEX. FAM. CODE ANN. § 3.003(a). To rebut this presumption, the party asserting an item of property is their separate property must prove this assertion by "clear and convincing evidence." *Id.* § 3.003(b). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007; *see Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.). "[C]onclusory or uncorroborated testimony that funds are separate property is insufficient to rebut the community presumption, unless there is also evidence that traces the funds." *In re Marriage of Nash*, 644 S.W.3d 683, 697 (Tex. App.—Texarkana 2022, no pet.) (quoting *In re Marriage of Born*, No. 06-08-00066-CV, 2009 WL 1010876, at *5 (Tex. App.—Texarkana Apr. 16, 2009, no pet.) (mem. op.)) (alteration in original); *see Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Smith v. Smith*, 22 S.W.3d 140, 144 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

We review a trial court's ruling on the property division in a final decree of divorce for an abuse of discretion. *Kelly v. Kelly*, 634 S.W.3d 335, 348 (Tex. App.—Houston [1st Dist.] 2021, no pet.). "We must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion." *Wilson v. Wilson*, 44 S.W.3d 597, 600 (Tex. App.—Fort Worth 2001, no pet.). If a trial court mischaracterizes a spouse's separate property as community property, then the trial court abuses its discretion and reversibly

4

errs. *Kelly*, 634 S.W.3d at 348 (citing *Sharma v. Routh*, 302 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). However, "[i]f the trial court mischaracterizes community property as separate property, that property does not get divided as part of the community estate." *Id.* at 349. "If the mischaracterized property has value that would have affected the just and right division of the community estate, then the mischaracterization is harmful, and we must remand the entire community estate for a just and right division based upon the correct characterization of the property." *Id.* "If the mischaracterization of the property had only a *de minimis* effect on the just and right division, then we need not remand the case to the trial court." *Id.*

**B.    Analysis**

**1.    Rocky's Dell 401(k) Account**

The trial court characterized the entirety of Rocky's Dell 401(k) as community property. On appeal, Rocky asserts that the "community's total interest in the Dell 401(k) account" consists solely of the "$124,493.76 in employee contributions, $33,381.67 in employer contributions, and $67.72 in dividends and interest, for an aggregate total of $157,943.15."

Prior to 2005, Texas common law ignored tracing principles when the asset at issue was a defined contribution retirement account, like Rocky's Dell 401(k). *See, e.g.*, *Pelzig v. Berkebile*, 931 S.W.2d 398 (Tex. App.—Corpus Christi–Edinburg 1996, no writ); *Hatteberg v. Hatteberg*, 933 S.W.2d 522 (Tex. App.—Houston [1st Dist.] 1994, no writ). Instead, Texas appellate courts looked solely to the increase in value of the retirement account during the marriage, regardless of whether that increase could be linked to

5

separate property. *See, e.g.*, *Pelzig*, 931 S.W.2d at 402; *Hatteberg*, 933 S.W.2d at 531. In 2005, however, the Legislature enacted § 3.007 of the Texas Family Code, and defined contribution plans became subject to the same tracing rules that apply to nonretirement assets. *See* Act of Sept. 1, 2005, 79th Leg., R.S., ch. 490, § 1, 2005 TEX. GEN. LAWS 1353–54 (amended 2009) (current version at TEX. FAM. CODE ANN. § 3.007(c)); *see also Goyal v. Hora*, No. 03-19-00868-CV, 2021 WL 2149628, at \*12 (Tex. App.—Austin May 27, 2021, no pet.) (mem. op.).

Thus, like any other asset, if Rocky failed to adequately trace the portions of the Dell 401(k) that he claimed were his separate property and "the evidence shows separate and community property have been so commingled as to defy resegregation and identification," then Rocky failed to rebut the presumption that the entirety of the Dell 401(k) was community property. *See Zagorski*, 116 S.W.3d at 316. "The only requirement for tracing . . . is that the party attempting to overcome the community presumption produce clear evidence of the transactions affecting the commingled account." *Welder v. Welder*, 794 S.W.2d 420, 434 (Tex. App.—Corpus Christi–Edinburg 1990, no writ). To adequately trace the assets in his retirement account, Rocky was required to provide clear evidence of the amount and character of each transaction affecting his Dell 401(k), as well as show whether the balance in his account dipped below the value of his separate property balance. *See Smith*, 22 S.W.3d at 146 ("Generally, when separate property and community property are commingled in a single bank account, . . . and where there are sufficient funds at all times to cover the separate property balance in the account at the time of divorce, we presume that the balance remains separate property."); *Snider v.*

6

*Snider*, 613 S.W.2d 8,10 (Tex. App.—Dallas 1981, no writ); *see also Goyal*, 2021 WL 2149628, at *16.

The record shows that Rocky's Dell 401(k) had a balance of $686,229.27 at the time of marriage and that it had a balance of $1,214,778.81 at the time of the final hearing. However, a statement for the month of March 2020 shows that Rocky withdrew $537,745.51 from his Dell 401(k) and then deposited $537,745.51 into the same Dell 401(k). When separate property and community property are commingled in a single account, there is a presumption that community property is withdrawn first. *Id.* at 319–20. But there is not a reciprocal presumption pertaining to deposits, and therefore, in the absence of clear and convincing evidence, trial courts still must presume that funds deposited into an account are community property. *See Beard v. Beard*, 49 S.W.3d 40, 59 (Tex. App.—Waco 2001, pet. denied). The community's interest in Rocky's Dell 401(k) at the beginning of March 2020 was not anywhere close to $537,745.51. Therefore, when Rocky withdrew $537,745.51, he withdrew the entirety of the community's interest in the Dell 401(k), but he also withdrew some of his own separate property interest in the account. *See Zagorski*, 116 S.W.3d at 319–20. When Rocky later deposited $537,745.51 into his Dell 401(k), the entire deposit consisted of community funds. *See Beard*, 49 S.W.3d at 59.

The March 2020 statement shows that on March 1, 2020, Rocky's balance in the Dell 401(k) was $917,674.60, and on March 31, 2020, Rocky's balance was $818,623.28. But there is no evidence in the record that indicates when he withdrew $537,745.51 from the account, when he deposited $537,745.51 into the account, what investments in the

7

account the transactions affected, or even why the transactions occurred.

The increase in value of any assets within the Dell 401(k) that were purchased prior to marriage that was due to market fluctuations alone would have been Rocky's separate property. *See Jensen v. Jensen*, 665 S.W.2d 107, 108–10 (Tex. 1984). However, without evidence demonstrating which assets increased in value because of the $537,745.51 deposit and which were unaffected by it, it is impossible to determine which assets purchased prior to marriage increased because of market fluctuation alone and which increased, in part, due to his deposit of $537,745.51 in community funds. *See Smith v. Lanier*, 998 S.W.2d 324, 332 n.7 (Tex. App.—Austin 1999, pet. denied); *see also In re J.Y.O.*, No. 05-20-00987-CV, 2022 WL 2071113, at *7 (Tex. App.—Dallas June 9, 2022, no pet. h.) (mem. op.); *Sanchez v. Wales*, No. 05-20-00485-CV, 2022 WL 1055376, at *6–7 (Tex. App.—Dallas Apr. 8, 2022, no pet.) (mem. op.); *Goyal*, 2021 WL 2149628, at *13; *In re Marriage of Born*, 2009 WL 1010876, at *3; *Lee v. Novak*, No. 03-00-00143-CV, 2001 WL 391530, at *5 (Tex. App.—Austin Apr. 19, 2001, no pet.) (mem. op.). Therefore, the evidence shows that the separate and community property in Rocky's Dell 401(k) became "so commingled as to defy resegregation and identification." *See Zagorski*, 116 S.W.3d at 316. Because Rocky did not clearly trace this transaction, he failed to rebut the presumption that the entirety of the retirement account was community property. *See McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973); *Kelly*, 634 S.W.3d at 349.

Further, even if we disregard the anomalous $537,745.51 transactions, Rocky has failed to show how he was harmed by the trial court awarding him $919,946.76 from the

8

Dell 401(k). When a trial court errs in characterizing separate property as community property but does not divest the party of his separate property, the party appealing must establish the mischaracterization as harmful. *See Tate v. Tate*, 55 S.W.3d 1, 6–7 (Tex. App.—El Paso 2000, no pet.); *see also Dean-Groff v. Groff*, No. 13-06-085-CV, 2007 WL 3293540, at *2 (Tex. App.—Corpus Christi–Edinburg Nov. 8, 2007, no pet.) (mem. op.). The Dell 401(k) statements show that the account contained no passively managed options prior to the marriage. During the marriage, $496,622.21 in passively managed options were acquired. Additionally, $78,435.83 in short term options and $68,025.98 in emerging market equity options were acquired during the marriage. The statements do not show that these options were purchased with separate property assets. *See Bush v. Bush*, 336 S.W.3d 722, 743 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Based on this evidence, the community's interest in the Dell 401(k) assets at the time of the final hearing was at least $721,519.84. *See* Tex. Fam. Code Ann. § 3.007(a). Susan was awarded less than a third of this amount. Rocky has thus failed to show how he was harmed by this award.

We conclude that the trial court did not err in its division of Rocky's Dell 401(k).

### 2. Susan's Follett Account

Rocky argues that Susan did not trace the funds in her Follett retirement account, and therefore, no evidence exists that Susan's account contained any separate property.

"The separate property interest of a spouse in a defined contribution retirement plan may be traced using the tracing and characterization principles that apply to a nonretirement asset." *Id.* § 3.007(c). Susan testified that she started a new job prior to the

9

parties' marriage and ceased making contributions to her Follett retirement account. It is true that Susan did not introduce any evidence for her Follett account. However, Rocky essentially shouldered that burden for her by introducing Susan's Follett account statements as evidence. These statements, like Rocky's, chronicle the value of the Follett retirement account beginning prior to the parties' marriage. They show that prior to marriage, on July 1, 2017, Susan had $246,623.28 in her Follett account and on September 30, 2017, Susan had $256,857.92. The most recent statement admitted into evidence showed that Susan's Follett account had a final value of $320,828.09.

However, unlike Rocky's statements, Susan's showed that neither she nor her former employer contributed to the Follett account during the period immediately prior to the parties' marriage or at any point during the marriage. These statements therefore corroborate Susan's testimony and show that the increase in value of her separate property retirement account was due to market fluctuations alone. *Jensen*, 665 S.W.2d at 108, 110; *Zagorski*, 116 S.W.3d at 316–17.

Therefore, we conclude that the trial court did not err in categorizing this account in its entirety as Susan's separate property.

### 3. Susan's LPL Account

Rocky argues that the trial court abused its discretion by confirming Susan's LPL account as her separate property. In her testimony, Susan stated that she owned this account prior to the marriage, and she also testified that she did not contribute to this account during the marriage. But there was no documentary or other supporting evidence as to the account's value either before or during the marriage. Generally, uncorroborated

testimony alone is insufficient to rebut the presumption that property owned at the end of a marriage is community property. *See In re Marriage of Nash*, 644 S.W.3d at 697; *Viera v. Viera*, 331 S.W.3d 195, 208 (Tex. App.—El Paso 2011, no pet.); *Bush*, 336 S.W.3d at 743; *Boyd*, 131 S.W.3d at 615; *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet. denied); *Osorno v. Osorno*, 76 S.W.3d 509, 512 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *but see Pace v. Pace*, 160 S.W.3d 706, 714 (Tex. App.—Dallas 2005, pet. denied) ("The testimony of a spouse seeking to overcome the community property presumption need not be corroborated to meet the clear and convincing standard. . . . However, a party's unsupported and contradicted testimony may not meet the clear and convincing standard."). The only evidence in the record as to the origin of Susan's LPL account was her testimony. Therefore, Susan failed to rebut the presumption that this account was community property. *See Viera*, 331 S.W.3d at 208. Because the trial court had insufficient information upon which to exercise its discretion, it abused its discretion. *See Watson v. Watson*, 286 S.W.3d 519, 525 (Tex. App.—Fort Worth 2009, no pet.).

However, our analysis does not stop here. We still must determine whether the trial court's mischaracterization of the LPL account led to a division of the community estate that was manifestly unjust or unfair. *See Viera*, 331 S.W.3d at 208. While a trial court reversibly errs by characterizing separate property as community property, it does not necessarily similarly err by characterizing community property as separate property. *See In re Marriage of Moncey*, 404 S.W.3d 701, 706 (Tex. App.—Texarkana 2013, no pet.). "A trial court does not abuse its discretion if the mischaracterization has but a *de*

11

*minimus* effect on the division of the community estate." *Viera*, 331 S.W.3d at 208.

On appeal, Rocky asks this court to "render that Susan and Rocky be awarded . . . $30,908.59 each from the LPL account." However, he cites to no place in the record, nor can we find one, where evidence was presented concerning the value of the LPL account at any point in time. Because there was no evidence presented to show the value of the LPL account, we cannot say that Rocky has met his burden of proving that the trial court's mischaracterization had anything other than a *de minimus* effect on the division of the community estate. *See id.* at 208; *Todd v. Todd*, 173 S.W.3d 126, 129 (Tex. App.—Fort Worth 2005, pet. denied). Therefore, the trial court did not abuse its discretion by confirming Susan's LPL account as her separate property.

We conclude by overruling this issue.

### III.    DIVISION OF COMMUNITY PROPERTY[1]

Rocky contends that the trial court omitted certain property from its division of the community estate, and therefore, its division of the community property was not just and right.

### A.    Applicable Law & Standard of Review

In a divorce decree, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001. In making this

---

[1] In her brief, Susan also raises various issues concerning the trial court's division of property. However, Susan did not file a notice of appeal. Therefore, the issues raised by Susan in her brief are outside the scope of this appeal and we may not consider them. *See* TEX. R. APP. P. 25.1(c); *Reich & Binstock, L.L.P. v. Scates*, 455 S.W.3d 178, 185 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also Locke v. Briarwood Vill.*, No. 14-17-00113-CV, 2018 WL 5621379, at *4 (Tex. App.—Houston [14th Dist.] Oct. 30, 2018, no pet.) (mem. op.).

division, "[a] trial court should consider many factors, including 'the spouses' capacities and abilities . . . and the nature of the property.'" *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (plurality op.) (quoting *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981)).

We review a trial court's division of community property for an abuse of discretion. *Banker v. Banker*, 517 S.W.3d 863, 869 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied). A trial court enjoys broad discretion, and its division of property "should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair." *Bradshaw*, 555 S.W.3d at 543 (quoting *Hedtke v. Hedtke*, 248 S.W. 21, 23 (Tex. 1923)). Our inquiry into whether a trial court abused its discretion requires a two-pronged analysis: (1) did the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court abuse its discretion by dividing the community estate in a manner that was manifestly unjust or unfair? *Viera*, 331 S.W.3d at 203.

**B.    Analysis**

**1.    Susan's Bank Account**

Rocky contends that the trial court omitted one of Susan's bank accounts from its division of the community estate, which resulted in an unjust division of property. As Susan points out in her brief, however, Rocky's brief did not cite to any part of the record to help us identify the missing bank account. *See* TEX. R. APP. P. 38.1(i).

In his reply brief, Rocky cites to portions of the record in which Susan discussed her Wells Fargo and USAA bank accounts. Susan testified that "[o]n the date of marriage, [she] had [$]38,782.62 in" those accounts. However, she also testified that she "spent all

of that to pay for [her] home in San Antonio." The trial court confirmed Susan's home in San Antonio as her separate property. Rocky also testified, and thus, judicially admitted, that Susan brought approximately $38,000 in separate funds into the marriage and depleted those funds to make payments on her separate property house. *See Pace*, 160 S.W.3d at 714; *Dutton v. Dutton*, 18 S.W.3d 849, 853–54 (Tex. App.—Eastland 2000, pet. denied). Susan testified that she did not add any funds to these accounts once they were emptied, and Rocky did not contradict this testimony.

Although property possessed at the end of the marriage is presumed to be community property, there was no evidence before the trial court that this property still existed. "Generally, a party who does not provide to the trial court any value for the property cannot, on appeal, complain of the trial court's lack of information in dividing the community estate." *Wheeling v. Wheeling*, 546 S.W.3d 216, 228 (Tex. App.—El Paso 2017, no pet.); *see LeBlanc v. LeBlanc*, 761 S.W.2d 450, 453 (Tex. App.—Corpus Christi–Edinburg 1988), *aff'd*, 778 S.W.2d 865 (Tex. 1989) (holding that where an appellant fails to provide values on any of the property to the trial court, he cannot on appeal complain of the trial court's lack of complete information in dividing or valuing that property). Therefore, because no evidence was presented to suggest these accounts had any value, the trial court did not err by failing to include these accounts in the community estate. *See Viera*, 331 S.W.3d at 209.

We overrule this issue.

## IV.    CLAIMS FOR REIMBURSEMENT

Rocky argues that the trial court erred by: (1) modifying its reimbursement award

to provide $12,000 to Rocky instead of the initial $24,000 and (2) not granting his additional claims for reimbursement.

## A. Standard of Review & Applicable Law

Generally, "spouses are free to make expenditures of community property absent some deception or objection by the other spouse." *Pelzig*, 931 S.W.2d at 400. "A right of reimbursement arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit." *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982). "The right of an estate to reimbursement from another estate is an equitable right and should be determined by equitable principles." *Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex. 1985); *see* TEX. FAM. CODE ANN. § 3.402(b). We review a trial court's determination of claims for reimbursement for an abuse of discretion, and "great latitude must be given to the trial court in applying equitable principles to value a claim for reimbursement." *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988). The party claiming the right of reimbursement bears the burden of proof. *Id.* at 197.

## B. Analysis

### 1. Downward Modification of Reimbursement Award

In its original decree, the trial court ordered Susan to reimburse Rocky for $24,000; the amount she took out of the parties' joint bank account after Rocky filed for divorce. In its amended final decree, the trial court ordered Susan to reimburse the community estate for $24,000, with each party to receive $12,000. *See* TEX. FAM. CODE ANN. § 3.402(8). A claim for reimbursement "create[s] a claim against the property of the benefited estate by the contributing estate." *Id.* § 3.404(b). Because Susan's individual estate was benefited

by the community estate, the trial court correctly modified its judgment by finding that Susan owed a claim of reimbursement to the community estate. *See id.*; *see also DeGroot v. DeGroot*, 260 S.W.3d 658, 662 (Tex. App.—Dallas 2008, no pet.) ("During the period of a trial court's plenary power, its power to modify its judgment is virtually absolute.").

However, Rocky complains that the trial court should have awarded the entirety of the $24,000 to him alone instead of dividing the award equally between the parties. Citing no authority, Rocky argues that "[s]uch ruling by the court was error and an abuse of discretion because the evidence showed that the trial court had sufficient reasons to have credited Rocky the $24,000."

In a divorce decree, the trial court must determine the rights of both spouses to a claim for reimbursement and can "order a division of the claim for reimbursement, if appropriate, in a manner that the court considers just and right, having due regard for the rights of each party." *Id.* § 7.007(2). Here, the trial court determined that it was the community estate, not Rocky's separate estate, that was ostensibly harmed by Susan secreting $24,000 worth of community funds into a separate bank account. Therefore, it was the community estate, not Rocky's separate estate, that was entitled to a reimbursement of $24,000. *See id.* § 3.404(b).

The trial court stated in its decree that its award for reimbursement was "part of the division of community property between the parties," and it also determined that its division of community property was "just and right." Rocky received approximately 75% of the total community estate, and Susan received approximately 25%. Because the trial court's determination deserves wide latitude, and because the trial court did not err by

16

awarding the community estate $24,000, we conclude the trial court did not abuse its discretion in its disposition of this reimbursement award. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998).

### 2. Miscellaneous Reimbursement Claims

Rocky argues that the trial court erred by failing to reimburse him for Susan's "wasteful spending of the community estate." Specifically, he states that "Susan spent $124,666.73 in self-care and personal items like purses and shoes."

During his testimony, Rocky testified to Susan's expenditures as follows:

> Target was about 25,000-and-change, $25,686.74. Spa, I know she had $4,297.66. She spent a lot of money on IKEA, $6,987. Her—her pets, we had—when we were together, she had two—two dogs and a cat, and she spent $2,400 on that. Fitness. And a lot of this was done over COVID. But she was going to yoga and fitness and spent over $2,768.05. Massage/acupuncture. She had never done acupuncture in the time we were together. She spent $7,973.83.

Rocky testified that these expenses totaled "$166,666.73." In adding these figures ourselves, we do not reach nearly the same sum. Regardless, Rocky did not testify that these expenses enhanced Susan's separate estate in any way. *See Vallone*, 644 S.W.2d at 459. Susan testified that she "spent money on massages for both" herself and Rocky. She also testified that Rocky made negative comments about her appearance and that was why she sought certain beauty treatments. Rocky did not detail what many of these miscellaneous expenses at Target, IKEA, and other stores were, and we see no evidence in the record that these expenses were not for the benefit of the community. *See Pelzig*, 931 S.W.2d at 400. Therefore, we conclude that Rocky did not meet his burden to prove that the expenses were reimbursable. *See Penick*, 783 S.W.2d at 197.

17

Rocky also claims the trial court erred by not awarding him a reimbursement award because "Susan also spent $42,000 on in[ ]vitro fertilization treatments *after* she and Rocky had separated and filed for divorce." However, bearing in mind that the rule of reimbursement is ultimately an equitable one and that the trial court has broad discretion in rejecting such claims, we conclude that the trial court did not err by denying Rocky's additional claims for reimbursement. *See id.* at 198.

## V.     ATTORNEY'S FEES

Finally, Rocky argues that the trial court erred by failing to award him reasonable and necessary attorney's fees.

## A.     Standard of Review & Applicable Law

Generally, a party has no inherent right to recover attorney's fees from another party "unless there is specific statutory or contractual authority allowing it." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019). "In a suit for dissolution of a marriage, the court may award reasonable attorney's fees and expenses." TEX. FAM. CODE ANN. § 6.708(c). "The ordinary meaning of 'shall' or 'must' is of a mandatory effect, whereas the ordinary meaning of 'may' is merely permissive in nature." *Chavez v. McNeely*, 287 S.W.3d 840, 844 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Tri-Star Petroleum Co. v. Tipperary Co.*, 107 S.W.3d 607, 615 (Tex. App.—El Paso 2003, pet. denied). We review a trial court's award of attorney's fees for an abuse of discretion. *In re Marriage of Mobley*, 503 S.W.3d 636, 645 (Tex. App.—Texarkana 2016, pet. denied).

**B. Analysis**

Rocky cites to *Russell v. Russell* for his contention that attorney's fees were mandatory in this case. 478 S.W.3d 36, 50 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("An award of no fees is improper in the absence of evidence affirmatively showing that no attorney's services were needed or that any services provided were of no value."). However, *Russell* is inapposite, as the statute at issue in that case was Texas Family Code § 157.167, which requires an award of attorney's fees. *See id.* at 43, 45–46 ("It is undisputed that section 157.167 mandates an award of reasonable attorney's fees and costs if the trial court finds that a party has failed to make child support payments . . . ."); TEX. FAM. CODE ANN. § 157.167.

The plain language of the statute at issue here gives the trial court discretion to either award or deny reasonable attorney's fees and expenses in a divorce decree. *Compare* TEX. FAM. CODE ANN. § 6.708(c), *with* § 157.167. And "[a] trial court has broad discretion in deciding whether to award reasonable attorney's fees in a suit for dissolution of a marriage." *Seitz v. Seitz*, 608 S.W.3d 272, 279 (Tex. App.—Houston [1st Dist.] 2020, no pet.). Finding no authority that requires a trial court award reasonable attorney's fees under Texas Family Code § 6.708(c), we overrule this issue.

## VI.    POST-JUDGMENT MOTIONS

Lastly, Rocky argues that the trial court improvidently granted Susan's post-judgment motion. He also argues that the trial court erred by not granting his post-judgment motion.

**A.      Standard of Review & Applicable Law**

A trial court retains plenary power over a case for a minimum of thirty days after it signs its final judgment. TEX. R. CIV. P. 329b. A court's plenary power may be extended by a party timely filing a motion for new trial or a motion to modify, correct, or reform the judgment. *Id.* R. 329b(a), (e), (g). "[A] timely filed post[-]judgment motion that seeks a substantive change in an existing judgment qualifies as a motion to modify under Rule 329b(g), thus extending the trial court's plenary jurisdiction and the appellate timetable." *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 314 (Tex. 2000). "When an appropriate post-judgment motion is filed within the initial thirty-day period, the trial court's plenary power over the judgment is extended up to an additional seventy-five days, depending on when or whether the court acts on the motion." *Shackelford v. Barton*, 156 S.W.3d 604, 607 (Tex. App.—Tyler 2004, pet. denied). "During the period of a trial court's plenary power, its power to modify its judgment is virtually absolute." *DeGroot*, 260 S.W.3d at 662; *see In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding).

We review a trial court's decision to grant or deny a post-judgment motion that seeks a substantive change in the existing judgment for an abuse of discretion. *See Soto v. Gen. Foam & Plastics Corp.*, 458 S.W.3d 78, 81 (Tex. App.—El Paso 2014, no pet.).

**B.      Analysis**

**1.      Susan's Post-Judgment Motion**

Rocky contends that the trial court abused its discretion by amending its original decree based on grounds not included in Susan's post-judgment motion. The trial court

20

signed its original decree of divorce on June 2, 2021. On June 23, 2021, Susan filed a motion for reconsideration and clarification of the final decree of divorce. In her motion, Susan asked the trial court to modify its reimbursement award of $24,000 to Rocky to $12,000.

However, at a hearing on her motion on August 9, 2021, Susan made an oral motion to modify her post-judgment motion and asked that the trial court reconsider its characterization of Susan's retirement accounts. The trial court granted this request despite Rocky's objections that: (1) this issue was not included in Susan's written motion, and (2) any amendment to Susan's post-judgment motion would be untimely. Rocky urges on appeal that the trial court erred by granting the relief Susan requested over his objections.

We need not address whether either objection should have been sustained, however, as "the trial court may, at its discretion, consider the grounds raised in an untimely motion and grant a new trial under its inherent authority before the court loses plenary power." *Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex. 2003). Further, the trial court "has authority *sua sponte* to modify the judgment within the duration of its plenary power." *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799, 815 (Tex. App.—Austin 2001, pet. denied); *see In re I.L.*, 580 S.W.3d 227, 244 (Tex. App.—San Antonio 2019, pet. dism'd). Therefore, even if the trial court erred by granting Susan leave to amend her motion for reconsideration, it was still permitted to amend its decree on the grounds Susan raised at the hearing. *See Horseshoe Bay Resort Sales Co.*, 53 S.W.3d at 815; *Dewey v. Dewey*, 745 S.W.2d 514, 516 (Tex. App.—Corpus

21

Christi–Edinburg 1988, writ denied) ("Even if appellee had limited her request to the issue of property division, the court, in granting a new trial, would not have been restricted to the grounds set forth in the motion for new trial.").

We are generally not permitted to disturb a trial court's judgment unless the error complained of "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1). Here, because the trial court had the authority to consider the issues raised by Susan and modify its judgment based on those issues, any error in granting Susan leave to amend her motion or considering an untimely motion did not likely cause the rendition of an improper judgment. *See Diaz v. Diaz*, 350 S.W.3d 251, 256 (Tex. App.—San Antonio 2011, pet. denied) ("Under an abuse of discretion standard, we will not reverse the trial court's judgment if the trial court reaches a correct result even for a wrong reason.").

### 2. Rocky's Post-Judgment Motion

Rocky also argues that the trial court erred by not granting his post-judgment motion. At the hearing on Rocky's post-judgment motion, the following exchange took place between the court and Rocky's counsel:

| [THE COURT]: | . . . But with regards to the motion that you have filed, . . . I've looked at what you said, and I'm not going to argue that not everything in there that you say does or does not have merit. I'm not arguing that at this point in time. But just having looked at everything that has occurred in this matter, it pains me to say this, but it almost seems like, based on what you're requesting and the amount of changes that you're asking for, that this is fraught and ready for, perhaps, just a new trial on this matter and having this whole thing re-litigated. |
|---|---|

22

. . . .

[THE COURT]: . . . I'd like to, rather than take things piecemeal, because you've—you've brought the motion to reform the judgment, I want to focus specifically on the question that I had for you in starting this process today, which is why I took the time to address it. But I've looked at your motion. And we'd just start all over again with a clean slate. So yea or nay to that?

[ROCKY'S COUNSEL]: I don't think that's an equitable resolution of the problem, because of the fact that at trial, we did trace our separate property.

. . . .

[ROCKY'S COUNSEL]: And there is no motion for new trial on file. And the Court, also, granted relief to the respondent beyond the motion for reconsideration, which is completely against the *Dewey versus Dewey* case.

. . . .

[THE COURT]: So[,] the answer to my question is, no, you don't want to?

[ROCKY'S COUNSEL]: Right.

. . . .

[ROCKY'S COUNSEL]: I believe that [the court should] reconsider or we should take it to the Court of Appeals.

The trial court did not rule on Rocky's post-judgment motion, and it was overruled by operation of law on November 1, 2021. *See* Tex. R. Civ. P. 329b(c). We cannot conclude that the trial court acted arbitrarily or unreasonably in not granting Rocky's motion. Rocky essentially issued the trial court an ultimatum; it had to either give Rocky

23

exactly what he wanted, no half-measures, or Rocky would appeal the trial court's decision. In Rocky's post-judgment motion, he complained of the same issues he now complains of on appeal. As was discussed, Rocky is not entitled to the relief he is seeking. Having analyzed the issues in Rocky's post-judgment motion, we conclude that the trial court did not abuse its discretion by allowing it to be overruled by operation of law. *See Soto*, 458 S.W.3d at 81.

We overrule this issue.

## VII.  CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
18th day of August, 2022.

24